## CARPENTER v. CONTINENTAL CASUALTY CO.
### No. 11000.

Circuit Court of Appeals, Eighth Circuit.
March 19, 1938.

Holton Davenport, of Sioux Falls, S. D. (C. J. Delbridge and George J. Danforth, both of Sioux Falls, S. D., on the brief), for appellant.

Gale B. Braithwaite, of Sioux Falls, S. D. (U. S. G. Cherry, of Sioux Falls, S. D., on the brief), for appellee.

Before STONE, GARDNER, and WOODROUGH, Circuit Judges.

GARDNER, Circuit Judge.

Appellant, as plaintiff, brought this action against appellee to recover upon the so-called "direct action" clause of a liability insurance policy issued by appellee to the Wagner Construction Company, of Sioux Falls, S. D. The parties will be referred to as they were designated in the lower court.

Plaintiff, in an action in the state court, recovered a judgment against the Wagner Construction Company and R. S. Sweetman for $14,830.10, based upon an accident which occurred in Sioux Falls, S. D., June 13, 1935, in which plaintiff was struck and injured by an automobile operated by Sweetman while pursuing his duties as superintendent of the Wagner Construction Company. The Home Indemnity Company had issued a policy insuring Sweetman to the extent of $10,000 against liability to any one person in an accident growing out of the operation of the automobile which he was driving at the time plaintiff received her injuries. A clause in that policy extended its protection to "any * * * corporation legally responsible for the operation thereof. * * *" The Wagner Construction Company is a corporation.

In the action brought by plaintiff in the state court against the Wagner Construction Company and Sweetman, the Home Indemnity Company undertook the defense, and after judgment it paid plaintiff $9,000 for a release of the judgment. Of record the sum of $4,750 remained unreleased. As part of this settlement, plaintiff, through her guardian, agreed to look solely to the defendant herein, the Continental Casualty Company, for collection of the balance of the judgment, while the Wagner Construction Company agreed to pay the costs and expenses, including attorney's fees, if such contemplated action against the defendant herein were unsuccessful, but not to exceed $1,000. It was to recover this balance due on the plaintiff's judgment against Wagner Construction Company and Sweetman that this action was commenced.

The question of defendant's liability in this action is dependent upon the provisions of the policy which it issued to the Wag-

ner Construction Company. In substance that policy purported to indemnify the Wagner Construction Company for "legal indemnity * * * for damages arising out of accidents resulting from the operation in the business of the named Assured of any automobile or motorcycle of the private passenger type * * *," with certain exceptions, limitations, and exclusions which will later be noted.

The policy in question was made up of two parts—a standard form of stock policy containing certain limitations and conditions, and a rider or indorsement attached thereto. In the policy proper, as distinguished from the rider, defendant agreed to indemnify the Wagner Construction Company against loss from the liability imposed by law upon it for damages arising out of bodily injuries, accidentally suffered, by any person or persons by reason of the ownership, maintenance, or use of any of the automobiles described in a schedule which was part of the policy. This provision is contained in what is described as clause "A.". There were other clauses pertaining to insurance for loss or damage of property, and these were designated as clauses "B" and "C." Referring to the liability of the insurer, the policy provided that:

"The liability of the Company under this policy shall be limited to the amounts and in the manner provided in the Schedule for each of the foregoing Insuring Clauses A, B, and C. The Company shall have no liability under any of said clauses for which the Company's liability has not been so limited *and for which premium has not been designated in the Schedule.* (Italics supplied.)

"If the stated and actual use of the automobiles covered by this policy is 'pleasure and business' or 'commercial' any person or persons while riding in or operating any of such automobiles and any person, firm or corporation responsible for the operation thereof, shall be considered as an additional Assured under this policy. * * *"

The term "pleasure and business" as applied to automobiles was defined by the policy to mean personal, pleasure and family use, including business calls, and the term "commercial" was defined as the transportation or delivery and the loading and unloading of goods or merchandise and other business purposes in direct connection with the assured's business occupation as

provided in the schedule, including pleasure use for the assured's family.

The schedule which was expressly made a part of the policy gave the name of the assured as Wagner Construction Company, its business as "road contractors" and stated that the automobiles described in it "are or will be principally maintained, garaged, and used" in Sioux Falls, S. D. The number and description of the motor vehicles were stated to be in the attached indorsement. The limits of the insurer's liability, under insuring clauses "A," "B" and "C" and the premiums respectively applicable thereto were shown as follows:

|  | Net Premium. |
|---|---|
| Insuring Clause A. For loss, including damages for loss of service, from an accident resulting in bodily injuries to or in the death of one person only Ten Thousand and No/100 Dollars ($10,000.00), and subject to the same limit for each person the total liability of the Company for loss, including damages for loss of service, resulting from any one accident resulting in bodily injuries to or in the death of more than one person is Twenty Thousand and No/100 Dollars ($20,000.00) | $23.00 |
| Insuring Clause B. The actual intrinsic value of the property damaged or destroyed at the time of its damage or destruction or the cost of its suitable repair or replacement and the value of the resultant loss of use thereof. The total liability of the Company under this clause on account of one accident, including loss of use, shall in no event exceed Five Thousand and no/100 Dollars ($5,000.00) | 10.00 |
| Insuring Clause C. (No Premium) | |
| Total Premium Payable at Beginning of Policy Period | $33.00 |

Turning now to the attached rider or indorsement, it is to be observed that it contains the following:

"In consideration of the premium herein provided, it is agreed that this policy, *subject to its limitations,* is extended to cover the legal liability *as defined in the policy of the named Assured only,* for damages arising out of accidents resulting from the operation in the business of the named Assured of any automobile or motorcycle of the private passenger type or from the operation in the business of the named Assured, by an employee of the named Assured of any motor vehicle of the commercial type provided such operation of commercial motor vehicles is occasional and not frequent, and provided the automobiles or motorcycles of the private passenger type and the commercial motor vehicles are not at the time of the accident

"(1) owned in whole or in part by the named Assured, or by the partners thereof, if the named Assured is a copartnership,

"(2) hired or leased by the named Assured, or

"(3) registered in the name of the named Assured.

"The named Assured declares that the schedule of this endorsement contains the names and location of all persons described as Class 1 below at the inception of the policy.

"The named Assured also declares that the schedule of this endorsement contains the number and location of all persons described as Class 2 below at the inception of the policy.

"In consideration of the foregoing declarations the Company agrees to extend the schedule to include any other Class 1 person subsequently employed and any changes in or additions to the number of Class 2 persons provided the named Assured notifies the Company in writing by means of the reports required below.

"For the purpose of premium computation the officers, employees and agents of the named Assured are classified as follows:

"Class 1. (a) Any outside officer or employee whose usual duties involve the use of an automobile or motorcycle of the private passenger type in the business of the named Assured.

"(b) Any officer or employee who receives a specific operating allowance of any kind for the use of an automobile or motorcycle of the private passenger type (operating allowance meaning rate per mile, gas, oil, tire or upkeep allowance).

"(c) Any other officer or employee whose salary, commission or terms of employment contemplate the use of an automobile or motorcycle of the private passenger type.

"(d) Any direct agent or representative who so far as the named Assured's busi-

ness is concerned is an exclusive agent or representative of the named Assured, and whose usual duties involve the use of an automobile or motorcycle of the private passenger type.

"Class 2. All other employees not included in Class 1."

The policy contains provision that the assured would maintain an accurate record of the name and location of all persons under class 1 and of any changes in or additions to the list of such persons, and that it would maintain a like record as to the number of class 2 persons, a copy of such record to be transmitted to the company at the end of the policy period, or at such times during the policy period as the company might request. Provision was also made that, upon submission of the record of employees, premium adjustment for class 1 persons should be made on the basis of a pro rata charge for persons added to and a pro rata return for persons eliminated from the schedule, and that for class 2 persons premium adjustments should be made on the basis of the average number of such persons employed during the policy period.

Included in this rider or indorsement, was a schedule as follows:

"It is agreed that the insurance is restricted to the coverages for which a specific premium charge is indicated in the space provided below.

and a like notice of claims for damages on account of such accidents. In the event that action should be brought against the assured to recover damages, assured was required to deliver to the insurer immediately, any summons or other process served upon it. The policy also contained a "direct action" provision.

The officers of the Wagner Construction Company knew of the accident the day it occurred. The action by plaintiff against the construction company and Sweetman was commenced November 25, 1935. There was some evidence that a local agent of the defendant at Sioux Falls was notified orally of the accident and of the action. There was other evidence that the first notice to the defendant was an oral notice about January 5, or 6, 1936. On January 17, 1936, attorneys for defendant wrote a letter to the Wagner Construction Company in which liability was denied because of failure to give notice of the accident and because the policy did not cover the automobile in question.

Mr. Sweetman was general superintendent of the Wagner Construction Company. He was driving his own automobile at the time of the accident. During the fall, winter and early spring months, his work was inside work but when construction work was in progress, his duties were hiring foremen and timekeepers, directing

Class 1.

| Headquarters of Employees, Officer or Direct Agent or Representative. | Name of Employee, Officer or Direct Agent or Representative ( * * *). | Premium ——— Bodily Injury | Property Damage. |
|---|---|---|---|
| | Total Advance Premium $ | $ | |

Class 2.

| Location | Number of | Rate Bodily Injury | Property Damage | Bodily Injury | Property Damage |
|---|---|---|---|---|---|
| Sioux Falls, South Dakota | Officers and Employees | | | | |
| | 100 | .23 | .10 | $23.00 | $10.00 |
| | | Total Advance Premium | | $23.00 | $10.00 |

The Minimum Annual Premium for This Coverage is $11.50
Bodily Injury and $5.00 Property Damage."

The policy and indorsement bear date May 2, 1935, but provide that they take effect April 12, 1935.

The policy proper contains provision for immediate written notice of any accident,

their general activities, and supervising the jobs which the company was carrying on. About April 8, 1935, the construction company started work on a sewage disposal plant near Sioux Falls, S. D., and about

May 1, 1935, it started work on a paving job in Lincoln county, some 12 miles from Sioux Falls. While these projects were under way, Sweetman spent about half his time in the office and the other half out on the projects. He, as well as three other stockholders of the corporation, was given free of charge all the gasoline and oil he needed for his automobile for personal as well as business uses.

At the conclusion of all the evidence, defendant moved for a directed verdict upon three grounds, viz.: (1) The policy was not intended to cover the operation of Mr. Sweetman's automobile, as he was a class 1 employee; (2) recovery was barred because notice had not been given as required by the policy and because the insured breached the co-operation clause; (3) while the judgment was unsatisfied of record to the extent of $4,750, still, by agreement, it was in fact fully satisfied as against the construction company, and, having been thus satisfied, plaintiff could not invoke it for recovery against the defendant. The trial court, expressing the view that the policy did not cover the operation of Mr. Sweetman's automobile, found it unnecessary to consider the other grounds urged in support of the motion, but directed a verdict for defendant, and from the judgment entered thereon plaintiff has appealed.

The sole question presented on this appeal is whether the court erred in sustaining defendant's motion for a directed verdict.

■ 1. The insuring clause of the rider has already been set out in this opinion. It will be observed that the schedule at its commencement, reads as follows: "It is agreed that the insurance is restricted to the coverages for which a specific premium charge is indicated in the space provided below."

The objection is made in argument that this part of the indorsement was in fine print, but this contention may be put aside because plaintiff in this action at law is suing on the policy and must recover, if at all, on the policy as written. Braman v. Mutual Life Ins. Co., 8 Cir., 73 F.2d 391.

■ It is also contended that the above-quoted language, appearing at the top of the schedule in the rider, should not be held to mean that the insurance is confined to classes of employees as indicated. Plaintiff insists that "coverages" refers to the risk insured against and not to the object or person insured. The word has had a general usage in insurance, though it seems not to have been the subject of definition to any great extent. Webster's New International Dictionary defines it, when pertaining to insurance, as "the aggregate of risks covered by the terms of a contract of insurance." Funk and Wagnalls New Standard Dictionary defines it as "the sum of risks which an insurance policy covers." The New Century Dictionary defines it as "that which is so covered." The context in which the word is here used, seems clearly to indicate that it refers to the objects or persons insured. The ordinary person reading this language, in its setting in the rider, would understand it to indicate the type of insurance protection afforded, which in this case would include a designation of the class of employees.

In McGlother v. Provident Mutual Accident Co., 8 Cir., 89 F. 685, 689, in an opinion by the late Judge Sanborn, this court said: "Contracts of insurance are not made by or for casuists or sophists, and the obvious meaning of their plain terms to the business and professional men who make and use them must not be discarded for some curious and hidden interpretation that is to be reached only by a long train of acute and ingenious reasoning." See, also, Travelers Ins. Co. v. Springfield Fire & Marine Ins. Co., 8 Cir., 89 F.2d 757.

■ The policy and the rider construed together clearly show that the intention was to insure only those classes for which premium payments were indicated in the schedule in the rider. The rider refers to the policy and the policy in turn refers to the rider, and they must be construed together. In clause A of the policy, insurance protection is offered the assured by reason of the ownership or use of any of the automobiles described in the schedule. The schedule there referred to is that in the policy proper. A similar reference to the automobiles described in the schedule is made in clause B. The schedule in the policy describes no automobiles, but in the space where such description should ordinarily be inserted appear the words, "See attached endorsement." The rider restricts the insurance to coverages for which a specific premium is included below. The space under "Class 1" is left blank, while in the space under "Class 2" there is a premium of $33 charged, $23 being for bodily injury and $10 for property damage. This is the same amount of premium as is set forth

in the schedule in the policy proper, and is the exact amount required to insure 100 class 2 employees. All these various provisions taken together leave no doubt that the intention was to insure none but class 2 employees.

The interpretation urged by plaintiff is not strengthened by the rule applicable to certain situations where an estimated premium is paid in advance, but the policy is intended to cover all employees of the insured, or a certain class, with an adjustment of the premium periodically. All such employees are in the class covered by the insurance, though omitted from the schedule. Amalgamated Roofing Co. v. Travelers' Ins. Co., 300 Ill. 487, 133 N.E. 259; Panhandle Steel Products Co. v. Fidelity Union Cas. Co., Tex.Civ.App., 23 S.W.2d 799. The indorsement states that "for the purpose of premium computation, the officers, employees and agents of the named assured are classified" as class 1 and class 2, and provision is also made for adjustments upon the expiration of the policy. The classification,. however, is more far reaching and fundamental than the payment or adjustment of premiums. It also defines and delimits the very risk assumed, and, in the words already quoted, "It is agreed that the insurance is restricted to the coverages for which a specific premium charge is indicated in the space provided below." This is followed by a blank so far as the required data for class 1 employees is concerned and by a full statement of the data required for class 2 employees.

█ Plaintiff contends that, so construed, this language is repugnant to the insuring clause in the indorsement or rider, which it is said is not limited to any class of employees. It is urged that the court should apply the rule that, where separate clauses in a contract are inconsistent and cannot be reconciled, the first must prevail. Other rules of interpretation, however, are here applicable. It is only by separating these provisions in the contract that any inconsistency can be read into them, and it is a cardinal rule of construction that no provision of a contract is to be disregarded as inconsistent with other provisions, unless no other reasonable construction is possible. The contract must be considered and construed as a whole, and later provisions may be so clear and unambiguous that the court must give them effect and disregard prior general expressions. American Refining Co. v. Bartman, 8 Cir., 261 F. 661. The intention of the parties is not to be deduced from fragmentary parts. It is not permissible to divide this contract into separate parts for the purpose of creating ambiguity which does not exist when the contract is read and considered as a whole. As said by this court in Gorman v. Fidelity & Casualty Co., 8 Cir., 55 F.2d 4, 5: "It may readily be conceded that where an insurance policy is reasonably susceptible of two constructions, that construction should ordinarily be adopted which is more favorable to the insured. But the rule is equally well settled that contracts of insurance, like other contracts, are to be construed according to the sense and meaning of the terms which the parties have used, and, if they are unambiguous, the terms are to be taken in their plain, . ordinary, and popular sense. * * * It does not follow, however, that the terms of an insurance policy may be distorted from their natural meaning, or that the agreed liability of the insurer should be enlarged into one which only a new contract could have imposed, nor, indeed, that a court should indulge in scholastic subtleties to extend the rights of the insured." See, also, Standard Life & Accident Ins. Co. v. McNulty, 8 Cir., 157 F. 224; Delaware Ins. Co. v. Greer, 8 Cir., 120 F. 916, 61 L.R.A. 137; King v. New York Life Ins. Co., 8 Cir., 72 F.2d 620.

█ Classifying the employees, and thereby the risks insured, created no repugnancy, but, rather, resulted in definiteness and certainty. The original insuring clause was not destroyed but clarified. The real intention of the contracting parties is clearly manifest and should, of course, control. Class 1 employees were not insured by this contract of insurance.

█ 2. It is finally contended that Sweetman was a class 2 employee. The policy, by its terms, became effective April 12, 1935. Beginning with the fall of 1934, and continuing to about April 1, 1935, his duties were almost entirely confined to the office. During the construction period his duties were partly inside and partly outside the office. As has been noted, the sewage disposal project was commenced the first week in April, 1935. This was in the north part of Sioux Falls. He used an automobile to go from the office to this work, part of the time using his own automobile. Section (a) of the definition of class 1 employees provides that, "Any outside officer

or employee whose usual duties involve the use of an automobile or motorcycle of the private passenger type in the business of the named assured." Whatever may be said of his classification while he was doing exclusively office work, certainly, when the sewage disposal work began, his duties involved the use of an automobile. He testified that he would not have walked to the sewage disposal job; that at least once, and maybe several times, a day, he would go to one or the other of these jobs; that it was part of his usual duties to go out to the jobs, and in order to conserve time it was part of his usual duties to go in an automobile. It seems clear that, under this insurance contract, an employee whose duties required the use of an automobile in his employer's business was a class 1 employee, and when the policy took effect Sweetman belonged to that class. The evidence on this phase of the case was not such that reasonable men could reach different conclusions, and, hence, the trial court properly directed a verdict for defendant.

3. As has been observed, the policy contains provision that, "The Assured shall give to the company, or to its authorized agent, immediate written notice of any accident covered hereby and shall also give like notice of claims for damages on account of such accidents." It is strenuously contended by defendant that there was a breach of this condition of the policy in that notice of the accident was not immediately nor promptly given. The provision requires two things—notice of the accident, and notice of claims for damages on account of such accident. While plaintiff contends that the provision was substantially complied with in the matter of giving the preliminary notice, she relies chiefly upon the contention that the giving of notice was excused because the knowledge of Sweetman could not be imputed to the assured, and, further, that it was waived because the defendant denied liability. The lower court did not pass upon this contention, and, being convinced that the court properly directed a verdict on the ground that the policy did not cover the loss, it seems unnecessary to extend this opinion by a discussion of this question.

The court having properly directed a verdict for the defendant, the judgment appealed from is affirmed.

WOODROUGH, J., concurs in this opinion.

STONE, Circuit Judge (concurring).

One contention here involves the sufficiency and the waiver of the notice of the accident—such notice being required by the policy. There is no dispute as to the facts upon this contention. The accident happened in June and the earliest notice under the evidence most favorable to appellant was shortly after the 25th of November. Obviously, this was not the immediate notice contemplated by the policy.

Appellant endeavors to avoid the situation of this lapse of time between the accident and the notice by contending that Sweetman, who caused the injury, was the only person in the company who knew that the accident occurred while he was using the automobile in company business; that none of the other officers of the Wagner Company knew that the accident had occurred while Sweetman was on company business until November 25th; and that Sweetman's knowledge cannot be imputed to the company. The crux of this position is whether the knowledge of Sweetman was the knowledge of the company. The undisputed evidence is that Sweetman was a stockholder and a general officer in the company. As such it was, obviously, his duty to communicate knowledge as to matters of this sort to the officer of the company having insurance matters in charge unless appellant is right in his contention that the situation here is within the principle of those cases which hold that a wrongdoer cannot be expected to report his own wrong to his employer and, therefore, his knowledge cannot be imputed to the employer. I think the principle of this rule is applicable only where there is fraud or some other situation creating an opposition of interests between the employee and the employer which would naturally lead to the concealment of the fact by the employee for his own protection. Here there was no such opposition of interests between Sweetman and the Wagner Company. There was no reason, for his own protection, why Sweetman would want to conceal from the Wagner Company that the accident had occurred while he was using the automobile in company business. It seems to me the rule has no application here.

Another contention of appellant is that the failure to give notice was waived by the denial of liability on other grounds. It is not necessary to discuss here whether to be such waiver it must occur during the period when notice could be given instead

of thereafter. The fact seems clear to me that there was no such waiver. There can be no doubt of the rule that where liability is denied solely upon other grounds that such character of denial will operate as a waiver of notice but here there was no such denial. The denial here, while stating others grounds, also specifically stated the ground of lack of notice. It seems impossible to me to say that a party waives lack of notice in a communication wherein he expressly relies thereon simply because he denies liability on other grounds as well. A waiver can arise only from a voluntary relinquishment of a known right. Such relinquishment may be shown not only by an express waiver but by taking a position inconsistent with insistence upon the right. Here there was not only neither express waiver nor inconsistent position but an express insistence upon the right coupled with other matters not at all inharmonious therewith.

On this matter of waiver plaintiff strongly relies on American Automobile Insurance Co. v. Castle, Roper and Mathews, 8 Cir., 48 F.2d 523, in this court. The language relied upon in the opinion is "the plaintiff waived notice and proofs of loss by denying liability on other grounds." At page 525 of 48 F.2d. This statement might mean either a sole reliance on other grounds or not. Except for the quoted statement, there is nothing in the entire opinion revealing the form of the denial of liability in that case.

Counsel for appellant calls our attention to the fact that an inspection of the record in the Castle Case reveals that the letter denying liability was based not only upon noncoverage of the loss by the policy but also upon failure to give the notice required by the policy. In so far as the factual situation, it is the same here as it was in that case. However, the issue raised here concerning waiver is different from the issue as to waiver which was considered and determined in that case.

That case was tried to the court. I have read the memorandum opinion of the trial court stating his views as to disposition of the case. I have read the briefs of both sides in presentation of that appeal to this court. There is not one word mentioning the effect of a waiver based on a communication denying liability for lack of notice and also for other grounds. The trial court seems to base waiver upon the pleading by the insurer in the case and not upon the letter of denial sent by the insurer. That seems the situation presented to this court.[1] Since the issue here vital was not considered by this court in that case, it is no authority here.

In support of the above quotation in that case, this court cites two cases which announce merely the general doctrine and wherein, apparently, there did not arise the point of whether denial of liability should be upon other grounds solely. One of the citations (Royal Insurance Co. v. Martin, 192 U.S. 149, 24 S.Ct. 247, 48 L.Ed. 385) refers to two earlier decisions in the Supreme Court in neither of which was this exact situation shown to be before the court. The only case I have found which, apparently, dealt with this exact situation, is Citizens' Fire Ins., Security & Land Co. v. Doll, 35 Md. 89, 101, 6 Am.Rep. 360, which supports the doctrine that to be a waiver of notice requirements in the policy the grounds of denial of liability must not include defective notice.

I think the condition of the policy requiring notice was fully effective, was not complied with, and was not waived. I express no opinion concerning the grounds for affirmance stated in the opinion by Judge GARDNER but prefer to concur in affirmance on the ground of lack of required notice—which seems clear to me.

[1] In appellees' (the insured) brief, after fully arguing the matter of waiver, that argument is thus summarized:

"Summarizing this branch of the argument, we submit:

"1st: As a matter of law, under the laws of Nebraska, a denial of liability made in the pleadings is inconsistent with a defense of want of notice of loss and constitutes a waiver of notice or a waiver of defects in notice.

"2nd: The policy does not provide for forfeiture of the insurance coverage by failure to give immediate notice and the courts will not write such a provision.

"3rd: An insurance company having by error, mistake or neglect failed to issue a written contract in conformity with the oral agreement, can not require notice of loss as to items omitted by error until the policy has been corrected.

"4th: Actual notice was immediately given to the authorized agent within the terms of the policy. Written notice was given as soon as the policy had been reformed."