## AVIATION EMPLOYEES INSURANCE CO. *v.* BARCLAY

[No. 121, September Term, 1964.]

*Decided January 11, 1965.*

The cause was argued before PRESCOTT, C. J., and HORNEY, MARBURY, SYBERT and OPPENHEIMER, JJ.

*E. Richard McIntyre*, with whom were *Kardy, Brannan & Neumann* on the brief, for appellant.

*M. B. Spaulding, Jr.,* with whom were *Allen, Spaulding & Cave* on the brief, for appellee.

PRESCOTT, C. J., delivered the opinion of the Court.

This appeal involves the construction of an insurance policy issued by the Aviation Employees Insurance Company (also known as Avemco Insurance Company), the appellant, to Free-state Aviation, Inc. (Freestate) which insured a fleet of airplanes owned by Freestate.

The appeal has been submitted on an agreed statement of facts, which follows:

"On the date in question, Freestate Aviation, Inc. was operating an airport facility, called Montgomery County Airport, in Gaithersburg, Maryland. Included within the scope of Freestate's operation was the leasing of light aircraft for hire to qualified pilots. The appellant, Aviation Employees Insurance Company, insured the fleet of airplanes belonging to Freestate Aviation, Inc., a copy of which policy of insurance, together with all endorsements, appears in the Appendix at pages E5-E23.

"On August 25, 1962, the appellee, a qualified, licensed private pilot, rented a Beechcraft Debonair airplane from Free-state Aviation, Inc. for the purpose of making a pleasure flight to Deep Creek Lake in Garrett County, Maryland. The appellee, while piloting the aircraft, attempted to take off from Bowman Field in Garrett County, when an accident occurred which caused extensive physical damage to the aircraft. The aircraft was repaired under the terms of the hull coverage portion of the policy of insurance [Coverage D]. Freestate Aviation, Inc. paid the sum of $300.00 representing the deductible amount, and the appellant, Aviation Employees Insurance Company, paid the balance of the repairs $9,090.21.

"The present litigation was then instituted by the appellant, as a subrogee, to recover from the appellee the costs of necessary repairs (less the deductible amount)."

The record does not disclose that these facts were agreed upon below.

It seems appropriate to mention here that the aircraft insur-

ance industry apparently drew upon the experience of the automobile insurance industry, for generally the aircraft policies have a coverage analogous to the bodily injury and property damage liability in automobile policies, and, when desired, a coverage analogous to collision coverage in such policies.

The pertinent portions of the policy here involved follow: "* * * Avemco Insurance Company [the appellant] * * * agrees with the insured named in the declarations made a part hereof, in consideration of the payment of the premium * * * and subject to the limits of liability, exclusions, conditions and other terms of this policy:

"1. COVERAGE A—AIRCRAFT LIABILITY. To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property * * * [and] bodily injury * * * sustained by any person * * * caused by an occurrence and arising out of the ownership, maintenance or use of the aircraft.

\* \* \*

"COVERAGE D—ALL RISKS FLIGHT. To pay for all physical loss of or damage to the aircraft while in flight * * *. [This clause provides for a deductible amount to be borne by the owner.]

\* \* \*

"III. DEFINITION OF INSURED. With respect to the insurance for Coverage A, the unqualified word 'insured' includes the named insured and also includes any person while using the aircraft * * * provided the actual use of the aircraft is by the named insured or with his permission. * * *.

\* \* \*

## EXCLUSIONS

[Under this heading, there are exclusions relating to Coverage A alone; others that relate to Coverages A and B alone; others to Coverages A and D alone; and others to Coverages C and D alone. These exclusions are not here involved other than to assist in discovering the intent of the contracting parties.]

\* \* \*

## CONDITIONS

\* \* \*

"14. RIGHTS AGAINST CARRIERS, BAILEES OR OTHER THIRD PARTIES—COVERAGES C AND D

"The insurance afforded by this policy shall not enure directly or indirectly to the benefit of any carrier or other bailee. Any act or agreement by the insured, prior or subsequent hereto, whereby any right of the insured, to recover the full value of, or amount of damage to, any property lost or damaged \* \* \* from any carrier, bailee or other party liable therefor, is released, repaired or lost, shall relieve the company of any liability under this policy \* \* \*.

\* \* \*

"17. SUBROGATION—COVERAGES A, C AND D. In the event of any payment under this policy the company shall be subrogated to all the insured's rights of recovery therefor against any person or organization and the insured shall execute and deliver instruments and papers \* \* \* to secure such rights. \* \* \*."

Appellant filed its declaration as subrogee upon the theory of a breach of the bailment contract.[1] The appellee filed pleas alleging that Freestate did not lease the aircraft to the plaintiff (apparently meant to be defendant) ; that an aircraft was furnished to defendant as a substitute aircraft, while his was being repaired; that defendant was an insured person under the insurance policy; and that defendant is not indebted to plaintiff. Later defendant filed general issue pleas, which he designated as an "amended plea." Still later he filed a motion for a summary judgment on the ground "that there is no genuine dispute between the parties as to any material fact and that de-

---

1. Some of the cases proceed upon this theory; others have been brought in tort for negligence; and still others, although comparatively few, have proceeded on the ground of conversion. St. Paul-Mercury Indemnity Co. v. City of Hughes, 331 S. W. 2d 106 (Ark.); Pottawatomie Airport & Flying Service, Inc. v. Winger, 271 P. 2d 754 (Kan.); Neel v. Henne, 190 P. 2d 775 (Wash.); Braman-Johnson Flying Service, Inc. v. Thomson, 3 N. Y. S. 2d 602; Rhyne, Aviation Accident Law, Ch. V; Anno: 17 A.L.R. 2d 913; 8 Am. Jur. 2d, Aviation, § 28.

fendant is entitled to judgment as a matter of law inasmuch as defendant was an additional assured under the terms of [the] insurance policy * * *." A deposition was thereafter taken at a law office, but it is not contained in the record extract, nor does the record extract disclose that it was presented to the lower court. No affidavits in support of, or in opposition to, the granting of the motion were filed. The trial court signed a short order which "granted" the motion for a "summary judgment." The lawyers did not request the judge to set forth the grounds of her decision (Maryland Rule 18 c), nor did the judge do so; hence we do not have the advantage of having the trial court's reasons for the actions taken.

No question is raised as to the propriety of Summary Judgment Proceedings here (Maryland Rule 610). And both sides agree that the trial court determined as a matter of law that the appellee was an "additional insured" under the insurance policy, and both sides also agree if that ruling be correct, the appellant cannot recover. Hence the answer to the question as to whether appellee was or was not an "additional insured" under the insurance policy is determinative of this appeal; and possible additional questions involved will have to be resolved initially in the trial court.

A policy of insurance is a contract, and, in the absence of constitutional or statutory barriers, the parties thereto are at liberty to make their own agreement. It needs no citation of authority to assert that where there is ambiguity in the terms of an insurance policy, they should be liberally construed in favor of the insured and against the drafter of the policy; but this does not mean that a strained or unjustified construction of the policy is to be adopted, which disregards the plain meaning and intent of the parties. We find no ambiguity in the pertinent terms of the policy here involved, so we shall give them their plain and ordinary meaning in determining whether the appellee was an additional insured.

The parties agree (as indeed they should) that when the appellee rented the airplane from Freestate on August 25, 1962, the relationship of bailor and bailee arose. *Schleisner Co. v. Birchett*, 202 Md. 360; *Fast Bearing Co. v. Koppers Co.*, 181 Md. 203; 8 Am. Jur. 2d, *Aviation*, § 28.

We now examine the precise terms of the policy. We find that the appellant agreed with Freestate (under Coverage D, which is here involved) to pay for all physical loss of or damage to the aircraft (subject to the deductible amount) while in flight; but this provision was "subject to the * * * exclusions, conditions and other terms of this policy." One of those conditions (14) stated that under Coverages C and D the insurance afforded by the policy should not enure, directly or indirectly, to the benefit of any bailee (which as we pointed out above was the status of the appellee) ; and then went on to provide that any agreement by Freestate, whereby Freestate released or impaired its right to recover against a bailee the full amount of damages for which the bailee was liable, should release the appellant from liability under the policy. Another Condition (17) provides that in the event of payments by the insurer under Coverages A, C and D the insurer should be subrogated to all of the insured's rights of recovery against any person.

The appellee, in his brief, contends "that the policy in question here is ambiguous, and hence should be construed against the drafter," and argues that "if appellee is to be excluded from coverage of the policy [under Coverage D] * * *, he must be excluded specifically, either by an exclusion or by a condition." However, he fails to point out wherein the policy is ambiguous, *i.e.*, where, under any fair construction of the policy's terms, the appellee is made an additional assured under Coverage D; nor does he assign any reason why the appellee must be explicitly excluded in a condition or an exclusion, when he was not included as an insured, either by specific terms or definition of terms, under Coverage D.

As indicated above the meaning of the pertinent terms and conditions of the policy is plain and clear. There are four coverages, A (liability), B (medical payments), C (all risks ground), and D (all risks flight) contained therein. We are concerned only with Coverage D. Under Coverage A, a definition of "insured," when unqualified is given, but this definition is specifically limited to Coverage A. Then throughout the "exclusions" and "conditions," they are limited to specified Coverages. Also, there are the specific provisions, named above, relative to bailees. When considered together, these manifest, we

think, a clear and unmistakable intention of the contracting parties that Coverage D was not to be extended for the protection of permissive users; otherwise a similar provision concerning permissive users under Coverage D would have been employed as that employed to extend coverage under Coverage A, and probably bailees (or certain types thereof) would have been excluded from Condition 14.

There are few, if any, decided cases that are directly in point. However, we find by analogy considerable support for our holding above in cases decided by highly-respected courts. In *Carpenter v. Continental Casualty Co.*, 95 F. 2d 634 (C. A., 8), the Court held that the plaintiff in an action on an automobile liability insurance policy must recover, if at all, on the policy as written, including an attached indorsement. In that case, the policy agreed to indemnify insured against loss for damages arising out of injuries to any person by reason of ownership or use of any automobiles described in a schedule, which described none, but referred to an attached indorsement restricting insurance to coverages for which a specific premium was indicated in a space below, a portion of which under heading "Class 1" was left blank, but premium of amount stated in the schedule and required to insure a stated number of "Class 2" employees of insured was indicated under heading "Class 2." It was contended that the policy covered "Class 1" employees as well as "Class 2" employees, but the Court held that the policy and the indorsement construed together clearly showed an intention to restrict the coverage to "Class 2" employees.

In *St. Paul-Mercury Indemnity Co. v. City of Hughes*, 331 S. W. 2d 106 (Ark.), an identical subrogation clause as Condition 17 of our policy was involved. An insurer of a county truck, under collision coverage, paid the county an amount of money for damages to the truck, sustained while it was bailed (loaned) to the city. After paying the damages, the insurer, as subrogee, brought suit against the city for breach of the bailment contract. The Supreme Court of Arkansas held the declaration stated a good cause of action.

In *General Acc. Fire & Life Assur. Corp. v. Wyble*, 144 So. 2d 114 (La.), different insurers carried the liability and

collision coverages on an automobile. General carried the collision and Maryland Casualty Company the liability coverage. The owner loaned the car to one Wyble, who negligently caused damage to it. General paid the amount of damages to the owner, and, as subrogee, brought suit against Wyble, who entered a third party claim against Maryland. Judgment was entered in favor of General against Wyble and against Maryland in favor of Wyble as third party plaintiff. Upon appeal, the judgment against Maryland was reversed because of an exclusion in its policy, and although Wyble's appeal was dismissed because of a deficiency in the appeal bond, the Court stated the judgment against Wyble was "correct."

In *Middlesex Mutual Fire Ins. Co. v. Ballard,* 148 So. 2d 865 (La.), a policy of insurance provided both liability and collision coverages. The owner loaned the automobile insured to a permissive driver, who collided with another car. After paying the owner the damages to his car, the insurer, as subrogee, sued the driver. The Court denied recovery because the policy contained extended coverage under the collision coverage to any person using the automobile "with the permission of the named insured."

In *Insurance Company of North America v. Crippen,* 223 S. W. 2d 297 (Tex. Civ. Appls.), the Court held that the lessee of an airplane was entitled to the benefit of the owner's hull coverage insurance, and stated as one of its reasons that the insurance company had agreed to extend such coverage to the lessee.

In *Western States Mut. Ins. Co. v. Standard Mut. Ins. Co.,* 167 N. E. 2d 833 (App. Ct. Ill.), the court had to deal with an automobile insurance policy with many of its provisions very similar to those in the case at bar. In that case, the policy expressly extended coverage under the property damage and bodily injury coverages to permissive users, but not to the "collision and upset" coverage. The policy contained conditions similar to Condition 14 (the insurance afforded by this policy shall not enure to the benefit of any bailee) and Condition 17 (the insurer shall be subrogated to all the insured's rights of recovery against any person) of the policy involved herein.

The owner-insured (of Standard) lent his automobile to a

driver, who collided with a tree. The insurer paid the damages (less the deductible portion) to the owner, who brought suit, and obtained judgment, against the driver to enforce the subrogation rights of the insurer.

The court stated that it had "been unable to unearth any authority interpreting the pertinent provisions of the instant policy [*i.e.* how far the expressly extended coverage under property damage and bodily injury affected or extended the "collision and upset" coverage, which did not explicitly extend the coverage beyond the named insured] insofar as they would apply to the facts here presented." The court specifically pointed out that there (as in the case *sub judice* by analogy) the recovery was had under the "collision and upset" coverage. It then goes to the subrogation condition (Condition 17 in our policy), and, without assigning its reasons or any authority, adopts the definition of the unqualified term "insured," which there, as here, was limited to property damage and bodily injury, and stated the driver was a "permissive user" under the policy. (This seems to be unquestionably true, and was conceded, insofar as liability for property damage and body injury was concerned, but seems to be, under the terms of the policy, plainly not so with reference to the collision coverage.) The court, having assumed the driver to be a permissive user under the collision coverage, states that it was unreasonable to require such a user to cooperate with the insurer to secure judgment against himself. (The authorities are in complete accord, and it is conceded in the instant case, that the insurer cannot recover, as subrogee, against its insured; but the question remains, was the driver an insured under the policy?)

Turning to the condition which provides that the insurance shall not enure to the benefit of a bailee, the court states that it is true that the owner could present his claim for loss either against his bailee or his insurer, but if he presents his loss to his insurer, the insurance enures to the benefit of the insured, not to the bailee; and it is only the selection made by the owner which benefits the bailee, not the payment of the collision loss by the insurer. The court concluded that the insurer could not recover against the driver, since he was an insured under the collision coverage of the policy.

We have found no case which has followed this one on any of the questions discussed above, and we are unable to concur in the reasoning adopted by the court in arriving at its conclusions; therefore, insofar as this decision conflicts with the decision there reached, we, respectfully, decline to follow it.

*Judgment reversed, and case remanded for trial; costs in this Court to be paid by the appellee; costs below to abide the result.*