AMERICAN CASUALTY COMPANY OF READING, PENNSYLVANIA *v.* AETNA CASUALTY AND SURETY COMPANY, ET AL.

[No. 421, September Term, 1967.]

678

*Decided December 11, 1968.*

The cause was argued before HAMMOND, C. J. and McWILLIAMS, FINAN, SINGLEY and SMITH, JJ.

*William H. Clarke* for appellant.

*Leon Shampain,* with whom were *Vaughan & Shampain* on the brief, for appellee Turner and *Jerrold Powers,* with whom were *Sasscer, Clagett, Powers & Channing* on the brief, for Aetna Casualty and Surety Company and Steuart Contee Day the other appellees.

FINAN, J., delivered the opinion of the Court.

This is an appeal from a declaratory decree entered in equity by the Circuit Court for Prince George's County pursuant to the Uniform Declaratory Judgment Act (Code (1967 Repl. Vol.) Art. 31A §§ 1-16). The court decreed that the Aetna

Casualty and Surety Company (Aetna) did not have a duty or obligation to defend a lawsuit filed by the passenger in a one vehicle accident in which it carried the liability insurance on the vehicle involved and further, that the American Casualty Company of Reading, Pennsylvania (American) which carried liability insurance on the operator of the vehicle, did have the duty and obligation to defend against the action brought by the injured passenger.

The events which led to the filing of the action for declaratory relief are as follows:

Steuart Contee Day (Day) owned and operated a gasoline station known as Day's Gulf Service at 7340 Wisconsin Avenue, Bethesda, Montgomery County, Maryland. In the early hours of March 10, 1966, Douglas E. Turner (Turner), who was a daytime employee of Day's at the gas station, arrived at the station with Mrs. Carol Logan. There, Turner, with the permission of Lloyd Monroe, the service station attendant on duty at the time, borrowed a 1962 Chevrolet tow truck, belonging to Day, for the purpose of pulling Turner's automobile out of a ditch. The record reveals that both Monroe and Turner knew that such permission was beyond Monroe's scope of authority. In his deposition Turner admitted that he knew that the use of the tow truck at night was specifically forbidden and that only Steuart Day, the employer, could authorize its use.

Mrs. Logan accompanied Turner as a passenger in the tow truck and they were involved in an accident on the Capitol Beltway, Interstate Route 495, at a point 900 feet east of Riggs Road, Prince George's County, Maryland, when the tow truck ran off the road. Mrs. Logan was injured and subsequently filed suit in the Circuit Court for Prince George's County (Law No. 31,081) against both Day and Turner seeking a judgment against each of them for the personal injuries sustained.

At the time of the accident Aetna carried a liability policy on the tow truck, with Day's Gulf Service named as the insured. During this same period of time American had a public liability contract insuring Turner.

After Mrs. Logan filed her personal injury suit on the law side of the circuit court, American filed a suit in equity, naming

Aetna, Mrs. Logan, Turner and Day as defendants, seeking a declaratory decree as to which, if either, Aetna's or American's insurance contract, should be subject to the claims made by Mrs. Logan.

The lower court was of the opinion that the controlling provision of the Aetna policy was the "permission" clause found in Part I, which expressly provided that any person using a vehicle with the permission of the insured (Day as owner of Day's Gulf Service) was to be covered under the policy, as long as the actual use was within the scope of the permission of its insured, and in the instant case it found that Turner had not been given this permission. The court below was not impressed with American's argument that coverage under its contract with Turner did not extend to his operation of a tow truck, which American classified as a "utility vehicle" [1] which was excluded from coverage under the policy, rather than a "non-owned automobile." Accordingly the court below held that Aetna had no obligation under its contract to investigate and defend the suit and that American under its contract with Turner did have a duty and obligation to investigate and defend any action arising out of the accident. It is from this decree that the appeal is taken.

In its argument on appeal American does not attack the interpretation which the lower court placed on the "permission" clause of Part I of Aetna's policy, rather it concentrates its efforts entirely on the interpretation given by the court to the coverage afforded by its own policy which interpretation it contends was erroneous. It should be noted that Turner also filed a separate appellee's brief in which he sought to uphold the lower court's ruling on the coverage afforded by American's policy whereby it was obligated to defend, while at the same time he urged that this Court reverse the lower court's ruling of no liability on the part of Aetna, a fellow appellee. However, since Turner did not enter any appeal whatsoever from

---

1. The lower court held that under American's policy the term "utility vehicle" applied to an "owned automobile" and that no mention was made of a "utility vehicle" under the definition of a "non-owned automobile," the included class pertinent to this case.

the lower court's decree we may not consider his attack on its decree on appeal.[2] It is therefore incumbent upon us to consider only the question of the coverage afforded by American's policy to Turner, as the operator of the tow truck, and whether the lower court was correct in holding that American had an obligation to defend the suit.

On appeal American did not take issue with the lower court's interpretation that the definition of a "non-owned automobile" did not exclude a tow truck, but relied on an entirely new argument, namely, the construction to be placed on the definition of "persons insured" under Part I of its policy,[3] which it contended excluded an insured who operated a "non-owned automobile" (including a non-owned tow truck) without the permission of the owner and therefore, on the basis of the lower court's finding of fact that Turner used the tow truck without Day's permission, placed him beyond the pale of coverage. For a proper understanding of this argument it is necessary to set forth the pertinent provisions of the insurance contract.

> "Persons insured. The following are insureds under Part I:
>
> * * *
>
> "(b) With respect to a non-owned automobile,
>
> (1) the named insured
>
> (2) any relative, but only with respect to a private passenger automobile or trailer provided his actual operation or (if he is not operating) the other actual use thereof is with the permission, or reasonably believed to be with the permission, of the owner and is within the scope of such permission, and
>
> (3) any other person or organization not owning or hiring the automobile, but only with respect to his

---

**2.** See *Harrison v. Robinette,* 167 Md. 73, 173 A. 60 (1934); *Sprecher v. Sprecher,* 206 Md. 108, 110 A. 2d 509 (1955); *Fitch v. Double "U" Sales Corp.,* 212 Md. 324, 129 A. 2d 93 (1957).

**3.** American had introduced its contract of insurance into evidence and had generally argued exclusion of the truck from coverage, and therefore this argument could properly be raised on appeal.

or its liability because of acts or omissions of an insured under (b) (1) or (2) above."

We think the unambiguous wording of the quoted provisions covering "persons insured" under Part I of the policy clearly demonstrates that the necessity for the "person insured" to obtain the permission of the owner of a "non-owned automobile" to operate the vehicle, applies only to relatives of the insured, as set forth in subsection (b) (2) and not to the "named insured." There is no qualifying language used in subsection (b) (1) with regard to the operation by the "named insured" of a "non-owned automobile." Nor does the appellant favor us with any authorities to support the construction it would have us adopt. We find no reason in law or logic which would prompt us to read such a limiting effect into the clear language of the clause and proviso.

In *Aviation Ins. Co. v. Barclay,* 237 Md. 318, 206 A. 2d 119 (1965), Chief Judge Prescott speaking for the Court said:

> "A policy of insurance is a contract, and, in the absence of constitutional or statutory barriers, the parties thereto are at liberty to make their own agreement. It needs no citation of authority to assert that where there is ambiguity in the terms of an insurance policy, they should be liberally construed in favor of the insured and against the drafter of the policy; but this does not mean that a strained or unjustified construction of the policy is to be adopted, which disregards the plain meaning and intent of the parties. We find no ambiguity in the pertinent terms of the policy here involved, so we shall give them their plain and ordinary meaning in determining whether the appellee was an additional insured." *Id. 323.*

See also cases collected in 12 M. L. E., Insurance § 75.

The "plain and ordinary meaning" of the language employed in American's policy compels us to agree with the lower court in holding that Turner, as a "named insured," was covered under its policy.

American also contends that the lower court erred in find-

ing that the "Exclusions" subsection (i) (2) of its policy did not exclude the tow truck, thus exposing American to an action for damages for the destruction of the tow truck. The appellee Aetna in its brief, points out that the specific issue as to American's liability for damages to the tow truck was not presented, tried or decided below and thus cannot be now raised on appeal (Maryland Rule 885). However, the record reveals that the construction to be placed on subsection (i) (2) was raised below, perhaps not on the specific question as to liability for damages to the tow truck, as the record is not clear on this point, but in support of American's contention that the tow truck was excluded from any coverage under American's policy. Also, the lower court in its opinion gave an interpretation as to the meaning of subsection (i) (2), an interpretation with which we agree, and we think we should address our attention to this issue.

We set forth the subsection under question:

"Exclusions. This policy does not apply under Part I:

\* \* \*

(i) to injury or destruction of (1) property owned or transported by the insured or (2) property rented to or in charge of the insured other than a residence or private garage."

The lower court was of the opinion that the word "property" as used in subsection (i) (1) was not intended to refer to "automobiles," otherwise the ridiculous conclusion would be reached that any vehicle owned by the insured would be excluded from coverage under the policy; obviously a result not intended by the parties to the insurance contract. Accordingly, by analogy, applying the same rationale to subsection (i) (2) it becomes clear that the use of the word "property" in subsection (i) (2) is not intended to embrace a "non-owned automobile" within the exclusion.

In contrast to the clarity of the language of the policy as found in the clause defining "persons insured," which we have previously discussed, the language in subsection (i) of the "Exclusions" appears imprecise. However, to adopt the construc-

tion advanced by American in its brief for which it cites no authority, would require a strained and artificial construction. It would have us apply the exclusion to any bailed property or "property in charge of the insured," including borrowed automobiles. Reading subsection (i) as a whole, we think the exclusion would apply to property of which the insured was a bailee or "in charge of," *other than automobiles*. We think the lower court gave a correct interpretation to subsection (i) (2). In *Mateer v. Reliance Ins. Co.*, 247 Md. 643, 233 A. 2d 797 (1967) we said:

> "Maryland does not follow the rule of many jurisdictions that an insurance policy is to be construed most strongly against the insurer. The Maryland rule is that the intention of the parties is to be ascertained if reasonably possible from the policy as a whole. However, if an insurance company draws an ambiguous clause, the ambiguity is to be resolved against it as the one who drafted the instrument, as is true in the construction of contracts generally. *Penn., Etc., Ins. Co. v. Shirer*, 244 Md. 530, 168 A. 2d 525 (1960)." *Id.* 648.

We affirm the decree of the court below.

*Decree affirmed, appellant to pay costs.*