989 F.2d 728
 Albert C. SCHNEIDER; Melvin J. Berman; Thomas G. Devine,
Plaintiffs-Appellees,
v.
CONTINENTAL CASUALTY COMPANY, Defendant-Appellant,
and
North American Reinsurance Corporation; General Reinsurance
Corporation, Defendants.
 No. 92-1599.
 United States Court of Appeals,
Fourth Circuit.
 Argued Feb. 2, 1993.
Decided March 26, 1993.
 
 Thomas Sykes Schaufelberger, Wright, Robinson, McCammon, Osthimer & Tatum, Washington, DC, argued (David E. Boelzner, Wright, Robinson, McCammon, Osthimer & Tatum, on brief), Richmond, VA, for defendant-appellant.
 Philip Richard Croessmann, Westberg & Croessmann, Warrenton, VA, for plaintiffs-appellees.
 Before HAMILTON and LUTTIG, Circuit Judges, and WARD, Senior United States District Judge for the Middle District of North Carolina, sitting by designation.
 OPINION
 LUTTIG, Circuit Judge:
 
 
 1
 Appellant Continental Casualty Company, citing an asbestos exclusion in its professional liability policy, refused to cover costs and damages incurred in connection with certain asbestos-related claims brought by appellees against appellees' assignors. The United States District Court for the Eastern District of Virginia denied Continental Casualty Company's summary judgment motion and granted partial summary judgment to the appellees, holding that the asbestos exclusion did not bar coverage for the claims. A jury subsequently awarded appellees $450,000. Continental Casualty appeals, arguing that the district court erred as a matter of law in construing the asbestos exclusion so as to not disclaim coverage. We agree, and therefore reverse.
 
 I.
 
 2
 In September 1987, Continental Casualty Company ("Continental") reissued a professional liability insurance policy to Sherertz, Franklin, Crawford & Shaffner ("SFCS"), a firm of architects and engineers. Under the policy, Continental agreed to "pay all amounts in excess of the deductible up to [its] limit of liability, which [SFCS] bec[a]me legally obligated to pay as a result of a 'wrongful act' occurring anywhere in the world." J.A. at 335. That coverage was limited, however, by a host of exclusions, including the asbestos exclusion at issue in the instant litigation. That exclusion provides as follows:
 
 ASBESTOS EXCLUSION
 
 3
 It is agreed that this policy does not apply to 'claim' or 'claim expense' alleged to or actually arising out of:
 
 
 4
 1. specification of a product, material or process containing asbestos;
 
 
 5
 2. failure to detect or advise of the existence or proportion of asbestos;
 
 
 6
 3. the performance or failure to perform 'professional services' in the abatement, replacement or removal of a product, material or process containing asbestos;
 
 
 7
 4. installation, modification, abatement, replacement or removal of a product, material or process containing asbestos;
 
 
 8
 whether by [SFCS] or on [SFCS'] behalf.
 
 
 9
 Id. at 356.
 
 
 10
 On September 21, 1987, appellees Albert C. Schneider, Melvin J. Berman, and Thomas G. Devine (collectively, "the Developers") brought a negligence and breach of contract action against SFCS in the Circuit Court for the City of Alexandria, Virginia, see Retirement Community Developers, Inc. v. Sherertz, Law No. 11889, reprinted in J.A. at 361-71, arising out of SFCS' performance of services for the Developers several years earlier during the renovation of an apartment building and the conversion of that building into a retirement complex. In their suit, the Developers claimed that SFCS had
 
 
 11
 failed to inform [them], verbally or in writing, of the possible existence of asbestos in the Premises, or of the ramifications of the presence of asbestos, or of the economic loss [they] would suffer as a result of the existence of asbestos, or of additional costs related to removal of asbestos, or of the possible costs which would arise if the asbestos was spread within the Premises in the event of water or fire damage to the Premises, or of the need for appropriate testing.
 
 
 12
 Id. at 366 (Pls.' Mot. for J. p 16). The Developers alleged that they had discovered materials that were "scientifically confirmed" to be asbestos after they had purchased the property and begun the renovation "[i]n reliance on the SFCS inspections and reports." Id. at 367 (Pls.' Mot. for J. pp 18-20). "As a direct result of the foregoing," the Developers claimed to "have incurred expenses in response to, in abatement of, and as the direct result of the presence of said asbestos." Id. at 368-70 (Pls.' Mot. for J. pp 28, 33).
 
 
 13
 When SFCS sought coverage from Continental in connection with this action, Continental refused, citing the asbestos exclusion. SFCS thereafter settled with the Developers for $300,000 and assigned to them "all [its] potential remedies and rights against [Continental] for insurance coverage arising out of the Developers' claims asserted in the [asbestos action]." Id. at 383.
 
 
 14
 The Developers then filed the present action against Continental, claiming that they were entitled as SFCS' assignees to recovery under the policy between Continental and SFCS. The district court granted the Developers' motion for partial summary judgment, holding that the asbestos exclusion did not bar coverage. See id. at 182. The court also denied Continental's motion to limit the Developers' recovery on the assigned claims to $279,912--the settlement amount plus unreimbursed defense costs, minus the deductible. See id. at 228. The case proceeded to trial, after which a jury awarded the Developers a verdict of $450,000. The district court denied Continental's motions for reconsideration and for judgment as a matter of law, see id. at 305, and this appeal followed.
 
 II.
 
 15
 The simple question before the court is whether the asbestos exclusion in the contract between Continental and SFCS disclaims coverage for costs and damages incurred in connection with the Developers' suit against SFCS and therefore bars recovery by the Developers, as assignees of SFCS' rights under the policy. We find it difficult to conceive of a question more easily resolved by resort to the plain language of the applicable provision. The exclusion disclaims coverage for claims "alleged to or actually arising out of ... failure to detect or advise of the existence or proportion of asbestos ... whether by [SFCS] or on [SFCS'] behalf." J.A. at 356 (emphasis added). The Developers sued SFCS for failing to discover and warn them about the presence of asbestos before they purchased and began renovating their property. They charged that despite SFCS' walk-through inspection of and report on the property, SFCS "failed to inform [them] ... of the ramifications of the presence of asbestos, ... of the economic loss [they] would suffer as a result of the existence of asbestos, ... of additional costs related to the removal of asbestos, or of the possible costs" that would be incurred if the asbestos were to spread, and "[a]s a direct result of" that failure, the Developers claimed, they incurred substantial losses. See id. at 366-70 (emphasis added). Such claims fall squarely within the asbestos exclusion's plain language as a matter of law. The district court accordingly erred in granting summary judgment to the appellees, and in denying appellant Continental's cross-motion for summary judgment.[1]
 
 
 16
 The district court's fundamental error was its admission of and reliance upon the Developers' expert affidavits even though the language of the contract was unambiguous. The Developers proffered two affidavits, one from an architect and the other from an asbestos consultant, each of which stated that "detecting and advising of the existence of asbestos is a special service not normally performed by architects/engineers" whereas "SFCS's failure to warn of the possible existence of asbestos was a normal part of the architect/engineers' job." J.A. at 179 (district court summary of affidavits). Each affiant averred that "it is my opinion that the alleged errors or ommissions [sic] are outside the meaning of the 'Asbestos Exclusion.' " Id. at 52 (Biegel Aff. p 10), 62 (Finkle Aff. p 11).
 
 
 17
 The precise purpose for which the district court received and considered these affidavits is unclear. It appears, however, that the court relied upon the affidavits either to confirm its asserted "plain language" interpretation of the exclusion as not disclaiming coverage of the Developers' claims or, as is suggested from the absence of any textual analysis of the exclusion's language and the court's essential reasoning, to rebut the otherwise plain meaning of the exclusion as disclaiming coverage for these claims. In either event, its admission and consideration of the affidavits was error.
 
 
 18
 If, as the district court stated, it believed from the outset that the exclusion's language unambiguously did not disclaim coverage for the Developers' claims, it was without authority to consider the affidavits. In the absence of ambiguity, a court may not consider extrinsic evidence as to the intent of the contracting parties. "Where an agreement is complete on its face and is plain and unambiguous in its terms, the court is not at liberty to search for its meaning beyond the instrument itself. This is so because the writing is the repository of the final agreement of the parties." Lerner v. Gudelsky Co., 230 Va. 124, 334 S.E.2d 579, 584 (1985); see also, e.g., Great Falls Hardware Co. v. South Lakes Village Ctr. Assocs., Ltd. Partnership, 238 Va. 123, 380 S.E.2d 642, 643 (1989) ("Where language is unambiguous, it is inappropriate to resort to extrinsic evidence...."). Indeed, this rule "has nowhere been more strictly adhered to in its integrity than in Virginia." Pulaski Nat'l Bank v. Harrell, 203 Va. 227, 123 S.E.2d 382, 387 (1962); see also Mathieson Alkali Works v. Virginia Banner Coal Corp., 147 Va. 125, 136 S.E. 673, 677 (1927) ("[N]o rule is better settled in this State than that extrinsic evidence is not admissible to determine the sense in which language is used unless the contract is ambiguous.").
 
 
 19
 If, as appears more likely, the district court believed at first that the exclusion's language unambiguously did disclaim coverage, its admission and reliance upon the affidavits to reach the contrary conclusion was likewise error. A court may not, where the contractual language is clear, invite or accept the submission of extrinsic evidence, "find" ambiguity in the contractual text based upon that evidence, and resolve the found ambiguity by resort to that extrinsic evidence. See, e.g., Cohan v. Thurston, 223 Va. 523, 292 S.E.2d 45, 46 (1982) (extrinsic evidence "cannot be used to first create an ambiguity and then remove it"). The ambiguity that justifies resort to extrinsic evidence must be apparent from the face of the contract. See, e.g., id.[2]
 
 
 20
 The court's improper consideration of the affidavit evidence persuaded it to accept (in error) the Developers' argument that the exclusion applies only to claims arising out of alleged failures to perform "specialized" asbestos services not traditionally performed by architects, even though nothing whatsoever in the exclusion expressly limits or could reasonably be read to limit its scope to specialized asbestos services.[3]
 
 
 21
 The affidavits were also the cause of the court's erroneous acceptance of the Developers' complementary argument that they had earlier sued SFCS only in connection with the detection of the "possible" existence of asbestos, a service that they alleged is traditionally performed by architects. It is self-evident, notwithstanding their use the word "possible" to modify the phrase "existence of asbestos," that the Developers' claim was one for damages arising out of the actual existence of asbestos.[4] They did not seek $15 million in damages in connection with the potential existence of asbestos--for example, for costs incurred for inspection of a building that proved not to have asbestos; they sought damages for costs incurred in connection with the actual existence of asbestos on their property. Cf. Pilot Life Ins. Co. v. Crosswhite, 206 Va. 558, 145 S.E.2d 143 (1965). As recited in their motion for judgment, they alleged that "the presence of asbestos was scientifically confirmed " and that they had "incurred expenses in response to, in abatement of, and as the direct result of the presence of said asbestos." J.A. at 367-70 (Pls.' Mot. for J. pp 20, 28, 33) (emphases added).[5]
 
 III.
 
 22
 The language of a contract is not merely one indicium of the contracting parties' intent. It is, to the extent it is unambiguous, determinative of that intent. If the text of the agreement is unambiguous, then the court is without authority to resort to extrinsic evidence in interpreting its meaning. The district court essentially stood this basic contract principle on its head, considering the appellees' extrinsic evidence when it believed the language of the contract to be unambiguous and rejecting the appellant's argument because it was based solely on the plain language of the contract and was unsupported by extrinsic evidence. Not only does the party whose argument is supported by the plain language of the contract need no additional support, that party is under no obligation to rebut contrary extrinsic evidence in order to sustain its claim.
 
 
 23
 The judgment of the district court accordingly is reversed, and the case is remanded with instructions to enter judgment for appellant Continental Casualty.
 
 
 24
 REVERSED.
 
 
 
 [1]
 We reject the Developers' arguments that the policy must be construed against Continental, as the insurer or as the drafter of this standard form contract. These rules of construction apply "only when the contract is ambiguous on its face." Blue Cross of S.W. Va. & Blue Shield of S.W. Va. v. McDevitt & Street Co., 234 Va. 191, 360 S.E.2d 825, 827 (1987); Pilot Life Ins. Co. v. Crosswhite, 206 Va. 558, 145 S.E.2d 143, 146 (1965); see also Harleysville Mut. Ins. Co. v. Dollins, 201 Va. 73, 109 S.E.2d 405, 409 (1959) ("It is settled law in Virginia that parties 'to insurance contracts are bound by the same rules of construction that apply to other contracts....' " (citation omitted)). Nor do we accept their contention at argument that they had no opportunity to negotiate for the elimination or the revision of the asbestos exclusion. Not only is there no record support for this contention, but the policy itself contradicts it. See J.A. at 349-52, 354, 358 (describing various deletions of and amendments to particular policy provisions). At any rate, " '[a] policy of insurance is a contract, and, in the absence of constitutional or statutory barriers, the parties thereto are at liberty to make their own agreement.' " Quesenberry v. Nichols, 208 Va. 667, 159 S.E.2d 636, 640 (1968) (quoting Aviation Employees Ins. Co. v. Barclay, 237 Md. 318, 323, 206 A.2d 119, 121 (1965))
 
 
 [2]
 Regardless of whether the district court initially believed that the language unambiguously did or did not disclaim coverage, once it admitted the extrinsic affidavit evidence, we believe that the question of the contract's meaning became one upon which summary judgment could not be granted. Cf. Combs v. Dickenson-Wise Medical Group, 233 Va. 177, 355 S.E.2d 553, 557 (1987) (" '[W]henever it is necessary to refer to testimony of witnesses in order to ascertain the contract, or to ascertain facts in the light of which the contract is to be construed, then the court is bound to refer such controverted matters of testimony to the decision of the jury.' " (quoting Camp v. Wilson, 97 Va. 265, 270, 33 S.E. 591, 592 (1899))). On this ground alone, therefore, the district court erred in granting summary judgment for the Developers
 
 
 [3]
 The district court's reliance upon the affidavits on the question of the scope of the exclusion is especially curious, given that the affidavits presented the opinions of two individuals, neither of whom participated in, or had knowledge about, the negotiation or drafting of the policy. Neither was in a position to shed any light on the only issue for which their affidavits could have been admissible--the intent of the contracting parties. Moreover, the district court apparently did not consider the only direct evidence as to the parties' intent, which actually conflicts with the district court's interpretation of the exclusion. Both Continental and SFCS--the insurer and the insured--expressed the view, well before the instant litigation, that the Developers' claims against SFCS were excluded. See J.A. at 391-92 (Continental), 396 (counsel for SFCS)
 This is not a case where the district court needed or admitted the expert testimony to understand technical terms of art. The only terms even alleged by appellees to be technical in nature were "detect" and "advise." These are simple words of simple meaning. "An insurance policy is a contract, and, as in the case of any other contract, the words used are given their ordinary and customary meaning when they are susceptible of such construction." Hill v. State Farm Mut. Auto. Ins. Co., 237 Va. 148, 152, 375 S.E.2d 727, 729 (1989); see also Clevert v. Jeff W. Soden, Inc., 241 Va. 108, 400 S.E.2d 181, 183 (1991) (rejecting argument that "dictionary definition" of operative words did not apply); Winn v. Aleda Constr. Co., 227 Va. 304, 315 S.E.2d 193, 194-95 (1984) ("Words used by the parties are normally given their usual, ordinary, and popular meaning."). Nor, even assuming that Virginia would permit the admission of usage of trade evidence outside the context of the state's uniform commercial code and where the contract language is unambiguous, could the district court have permissibly considered these affidavits. Neither affiant--an architect and an asbestos consultant--even purported to be expert in the usage in the insurance trade of the terms whose meanings were in dispute.
 
 
 [4]
 The Developers, of course, would have had every incentive to cast their complaint talismanically in terms of the possible existence of asbestos, because of their awareness that the contract between Continental and SFCS, at least on its face, disclaimed coverage only for claims arising out of the existence of asbestos
 
 
 [5]
 Because we conclude that the Developers' claims arose out of the alleged actual existence of asbestos, we need not address the district court's conclusion that claims arising out of an alleged failure to detect the possible existence of asbestos fall outside the exclusion. See id. at 179