# ROBINSON *v·* HILLMAN.*

ESTATES; EASEMENTS; TRIAL; QUESTIONS FOR JURY.

1. Where the owner of an estate uses a quasi easement of an apparent and continuous character over one part of his estate for the benefit of the other part, and which is reasonably necessary for the enjoyment of such other part, and subsequently conveys the quasi dominant part to one person and the quasi servient to another, the grantees, in the absence of express provision, will take the respective parts burdened or benefited as they were prior to the division.

2. So long as there is unity of ownership of land, there can be no easement, as the owner of the whole may at any time make such changes in any part as he please. When, however, a severance occurs, the rights of the owner of each part becomes fixed, and each is presumed to have purchased with reference to the situation then existing.

3. The rule that when the owner of an estate uses a quasi easement over one part, for the benefit of the other, and subsequently conveys the quasi dominant part to one person and the quasi servient to another, the grantees, in the absence of express provision, will take the respective parts burdened or benefited as they were prior to the division, applies only where the easement is either known to exist, or the situation is such as to indicate its existence to anyone exercising ordinary care. A buried or concealed easement will only pass by express grant.

4. Where, under such circumstances, the alleged easement consists of an alley right of way, and the evidence is conflicting in an action for its obstruction, as to whether it was apparent and well defined before the destruction of the unity of title, and had been used by the plaintiff, and was reasonably necessary for the enjoyment of his premises, the question of the existence of the easement is for the jury.

5. In an action for damages for interference with the use and occupation of an easement, in which there was verdict and judgment for the plaintiff, from which the defendant appealed, it was *held* that it was

---

* *Easements.*—As to easements created by severance of tract of land with apparent benefit existing, see note to *Rolls* v. *Nelson*, 26 L.R.A. (N.S.) 315.

too late for the appellant to raise the question for the first time on appeal, whether the tenant in possession had a right to maintain such a suit.

6. One rightfully in possession of premises to which an easement is appurtenant is entitled to damages for abridgment of the easement.

No. 2202.   Submitted December 8, 1910.   Decided January 3, 1911.

HEARING on an appeal by the defendants from a judgment of the Supreme Court of the District of Columbia, on verdict, in an action for damages for the obstruction of a right of way and for the destruction of an easement; and on a motion by the appellees for leave to file a remittitur as to the sum for which they were given judgment under the second count of the declaration, if, in the opinion of this court, error was committed with respect to the verdict and judgment under that count.                    *Motion granted and judgment affirmed.*

The COURT in the opinion stated the facts as follows:

This is an appeal [by Dora F. Robinson and C. Barnwell Robinson] from a judgment of the supreme court of the District, upon a verdict for the plaintiffs, Myra T. Hillman and Elizabeth Clement, the declaration being in two counts, one for damages occasioned by the permanent obstruction of an alleged right of way, and the other for damages flowing from the destruction of an alleged easement in the form of a sewer pipe leading from plaintiffs' through defendants' premises. The verdict on the first count was for $1,500, and on the second count, $500. A remittitur was filed reducing the verdict on the second count to $416.64.

In 1868, and for many years prior thereto, one Hugh Gelston was the sole owner in fee simple of a parcel of land in Reservation 11 in this city, rectangular in shape, with a width of 50 feet and a depth of 150 feet, bounded on the west by Third street, on the north by a paved public alley 14 feet wide, and on the east by a public alley 35 feet wide. In that year Gelston divided said tract into four parcels, one

comprising the east 50 feet, now held by the defendants, and known as lot 36, the other three fronting on Third street, each 16 feet, 8 inches wide, with a depth of 100 feet,—the south lot known as No. 225, the middle as No. 227, and the north as No. 229. On July 20th, 1868, Gelston leased the three Third street lots to Edward Wools for ninety-nine years, renewable forever, retaining the reversion. Wools, as lessee, thereupon constructed three houses on the three parcels, and on September 27th, 1869, assigned his leasehold interest in the middle parcel, No. 227, to Seth Hillman, through whom the plaintiffs claim. After the erection of the three Third street houses, Gelston erected four small houses on the east 50 feet of the lots fronting on the 35-foot alley. At the rear of these four houses he built a fence in which there were four gates, one to accommodate each house. These gates opened into a 4-foot private alley which had no existence prior to that date, and which was thereafter used by both the tenants of the four houses fronting on the 35-foot alley and by the occupants of the three houses on Third street, as an outlet to the 14-foot alley on the north. The situation will be better understood by reference to the plat on next page.

Gelston died in 1874. At the time of his death he was the owner in fee of all of said tract, subject to the outstanding lease for ninety-nine years to two of the Third street houses, including the plaintiffs', the lease to the other Third street parcel having been reconveyed to him by Wools in 1870. Under Gelston's will all his interest in this property passed to his three children, Edward H., Victor d'L., and Rebecca Elsie, as tenants in common. Thereafter, by deed dated January 3d, 1876, Edward and Victor conveyed to Rebecca premises Nos. 225 and 227, being the southern and middle Third street premises, and she, by deed of the same date, conveyed to them all the remainder of said original parcel, which subsequently became vested in the widow of said Victor, Florence B. Gelston, who, by deed dated December 30th, 1898, conveyed to the defendant Mrs. Robinson, in fee simple, the east 50 feet of said original tract, being said lot 36, "with the use of the

alley located between the property now being described, and the property fronting on Third street, as now used and enjoyed." The deed from the Gelston brothers to their sister Rebecca, which, as above noted, included the reversion of plaintiffs' premises, purports to convey the fee and all "privileges, easements, and appurtenances."

The evidence of the plaintiffs tended to prove that when Seth Hillman, in 1869, moved into said house No. 227, now occupied by the plaintiffs, it was a new house; that the three Third street houses were drained by sewer pipes running backward from each of said houses, and emptying into one terra cotta pipe at a point about 50 feet east of said Third street, and thence by said pipe to and through said lot 36 to the public sewer in said 35-foot alley; that this drainage continued unobstructed until cut off by the defendants in 1898. There was no evidence that Gelston, the then owner of defendants' premises, had any knowledge of the laying of this sewer pipe therethrough. It was admitted by Mrs. Hillman, on cross-examination, that said pipe was not visible until uncovered by the defendants, when the witness then saw it for the first time; that no repairs, to the knowledge of the witness, were ever made on said pipe.

The testimony of the plaintiffs further tended to show that, upon the erection of said four houses by Gelston, about a year after Wools built the three houses on Third street, "a 4-foot strip" or alley between the houses on Third street and Gelston's four houses, and running wholly outside of the west 100 feet of said original tract, that is to say, wholly within the east 50 feet thereof, and on the premises now held by the defendants, was laid out for the use and convenience of the occupants of all of said houses in reaching said 14-foot alley; that the closing of this private alley left plaintiffs no rear entrance to their premises; that when the defendants, in 1908, erected a building on their premises covering the whole lot, they removed said terra cotta sewer pipe. It further appeared that the defendants, claiming that said private alley was upon the rear of the three Third street lots, cut off about

4 feet of plaintiffs' shed, and put the alley 4 feet west of where it then was.

The testimony of the defendants tended to show that the first knowledge they had of said sewer pipe was obtained while excavating for the foundation of their building, when they immediately notified one of the plaintiffs, and that they did not cut off the pipe until a month thereafter; that the pipe was about 6 feet beneath the surface, composed of 3-foot sections with open joints, without putty or cement; that during the construction of said building, a cave-in of the west bank between the defendants' and plaintiffs' premises exposed a brick walk which had been covered with dirt and ashes, and which was located just west of defendants' west line. The bricks were of ancient make and laid "in herring-bone fashion," and the walk was located wholly outside defendants' premises. Other evidence to the same effect was introduced. It further appeared that there was a large public sewer in said 14-foot alley. There was no evidence, however, as to how long it had been there.

At the close of all the evidence, the defendants moved the court for a directed verdict, which motion was denied and exception noted.

The court, over the objection and exception of the defendants, granted the following prayer of the plaintiffs:

"1. The jury are instructed that if they find from the evidence that at the time of the partition deeds between the heirs and devisees of Hugh Gelston, the plaintiffs, or those under whom they claim, were and had been continuously using and enjoying the certain right of way mentioned in the declaration, and that said right of way was visibly established and was reasonably necessary for the enjoyment of said property, and that the use thereof was continued by the plaintiffs or those under whom they claim, until obstructed, and was never voluntarily abandoned, and that the defendants or either of them destroyed or obstructed the same, the plaintiffs are entitled to a verdict."

In his general charge to the jury, the court said: "The plain-

tiff claims, and claims only,—and it is only upon that theory, if you find that claim to be established by the evidence, that she can recover,—that at the time this entire tract was owned by a single owner, either that he built this sewer himself and established the alley himself, or somebody else did it with his approval and consent, and he, at the time, intended that the alley or sewer should become a thing which should permanently pertain to this house, No. 227 Third street."

*Mr. Lorenzo A. Bailey, Mr. George A. Prevost,* and *Mr. John Ridout* for the appellants.

*Mr. Eugene A. Jones* and *Mr. Charles F. Carusi* for the appellees.

Mr. Justice Robb delivered the opinion of the Court:

The rule of the common law is well settled by a long line of authorities that where the owner of an estate uses a quasi easement of an *apparent* and continuous character over one part of his estate, for the benefit of the other part, and which is reasonably necessary to the enjoyment of that other part, and subsequently conveys the quasi dominant part to one person and the quasi servient to another, the grantees, in the absence of express provision, will take the respective parts burdened or benefited as they were prior to the division. *Lampman* v. *Milks,* 21 N. Y. 505; *Barnes* v. *Loach,* L. R. 4 Q. B. Div. 494, 48 L. J. Q. B. N. S. 756, 41 L. T. N. S. 278, 28 Week. Rep. 32; *Goodall* v. *Godfrey,* 53 Vt. 219, 38 Am. Rep. 671; *Ellis* v. *Bassett,* 128 Ind. 118, 25 Am. St. Rep. 421, 27 N. E. 344; *Greer* v. *Van Meter,* 54 N. J. Eq. 270, 33 Atl. 794; *Eliason* v. *Grove,* 85 Md. 215, 36 Atl. 844. So long as there is unity of ownership there can be no easement, for the obvious reason that the owner of the whole may at any time make such changes in any part as he pleases. When, however, the severance occurs, the rights of the owner of each part become fixed, and each is presumed to have purchased with reference to the

situation then existing. This rule is so well established that we content ourselves with its mere statement.

The evidence before the jury, bearing upon the first count of the declaration, was conflicting, plaintiffs' evidence tending to show that said "4-foot strip" or right of way was established and located as averred in the declaration, and that the use of said right of way was reasonably necessary to the enjoyment of plaintiffs' property, while the defendants' evidence was to the contrary. It was for the jury to determine the issue thus raised, and their verdict must be accepted by us unless errors of law occurred.

There being evidence before the jury that when the heirs of Hugh Gelston destroyed the unity of title theretofore existing, by dividing said estate among themselves, said right of way was apparent and well defined, and had been used for many years by the occupants of plaintiffs' premises, and that such use was reasonably necessary to the enjoyment of those premises, the court's charge to the jury on this branch of the case was correct.

The verdict upon the second count of the declaration is challenged upon the ground that the alleged easement therein mentioned was concealed, and that there was nothing in the general situation reasonably calculated to convey notice of its existence. There was no evidence even tending to show that Hugh Gelston had actual knowledge of the running of this sewer pipe through lot 36. Whether, when that pipe was laid, there was a sewer in the 14-foot alley, is not important, for the reason that there was nothing to prevent Wools from running said pipe down said alley to the 35-foot alley. Lot 36 was then practically unoccupied, and there was no evidence before the jury which would warrant the finding that Gelston ever knew that the said sewer had been run through said lot. There was no evidence that any of the Gelston heirs, when they divided his estate among themselves, knew or had any reason to know of the existence of this sewer pipe in lot 36. How can it be contended that those heirs, when they made such division, took into consideration, as affecting the relative values

of the different parts, an easement the existence of which was not apparent, and in fact was unknown to them? And yet the verdict under the second count *must* be sustained, if at all, upon that ground. To sustain that verdict upon the evidence in this case would do violence to the rule which the plaintiffs have invoked to sustain the verdict under the first count of their declaration. In the division among said heirs, there was nothing to indicate that lot 36 was burdened with this alleged servitude, nor was there anything to indicate that plaintiffs' premises were benefited by it. In fact, it is more reasonable to suppose that the parties, knowing that said 14-foot alley either contained a sewer or led directly to the one used, assumed that Wools, the builder and owner of the three houses, ran the sewer pipe from those houses either to or down said 14-foot alley, and thus avoided trespassing upon lot 36. It is unreasonable to assume, from the evidence and the general situation of the premises, that Gelston's heirs or the defendants knew of the existence of this sewer pipe. Taking into consideration the facts and circumstances surrounding this case, we are of the opinion that this buried or concealed easement could pass only by express grant. In the cases heretofore cited, and in the other authorities examined by us, it appeared that the easement was either plainly apparent, or that the situation was such as to indicate its existence to anyone exercising ordinary care.

In *Pyer* v. *Carter,* 1 Hurlst. & N. 916, 26 L. J. Exch. N. S. 258, 5 Week. Rep. 371, upon which plaintiffs rely, the court said: "The defendant stated he was not aware of this drain at the time of the conveyance to him; but it is clear that he must have known, or ought to have known, that some drainage then existed, and if he had inquired, he would have known of this drain; therefore it cannot be said that such a drain could not have been supposed to have existed; and we agree with the observation of Mr. Gale (Gale, Easements, 2d ed. p. 53) that by 'apparent signs' must be understood not only those which must necessarily be seen, but those which may be seen or known on a careful inspection by a person ordinarily conversant

with the subject." The evidence before the court in that case evidently warranted the conclusion that the situation existing at the time of the conveyance to the defendant was such as to charge anyone exercising ordinary care with knowledge not only of the existence of the drain, but of its location. As above stated, there was nothing to charge the heirs of Hugh Gelston with knowledge of the existence of the sewer pipe in lot 36, and nothing requiring a reasonably prudent person to make inquiry in reference thereto.

In *Butterworth* v. *Crawford,* 46 N. Y. 349, 7 Am. Rep. 352, the owner of two adjacent houses and lots in the city of New York built a vault, half of which was in each lot. The division fence of the lots extended over the center of the vault, and an outhouse for each dwelling was erected on either side of said fence and over the vault. The drain from the vault ran through one of the lots, which the defendant purchased. The plaintiff subsequently purchased the other lot. Whereupon the defendant closed up the drain. After stating the general rule, the court said: "Unless, therefore, the servitude be open and visible, or, at least, unless there was some apparent mark or sign which would indicate its existence to one reasonably familiar with the subject, on an inspection of the premises, the rule has no application." The court also referred to *Pyer* v. *Carter,* supra, and distinguished that case from the case before it.

The plaintiffs having filed a motion that they be permitted, in the event this court should be of opinion that error was committed with respect to the verdict and judgment under the second count in the declaration, but that the verdict and judgment under the first count was correct, to file a remittitur of the $416.64, recovered under said second count, that motion will be granted. (*Hansen* v. *Boyd,* 161 U. S. 397, 40 L. ed. 746, 16 Sup. Ct. Rep. 571.)

The judgment under the first count will therefore be affirmed, each party to pay half the costs in this court.

*Affirmed,* as to the first count.

A petition for a rehearing was denied, the court in its opinion saying:

This motion must be denied. Damages occasioned by the interference with the use and occupation of this easement were sought and obtained in the trial court without any question being raised as to the right of the tenant in possession to maintain such a suit. It is too late to raise the question here.

It may be suggested, however, that one rightfully in possession of premises to which an easement is appurtenant is entitled to damages for the abridgment of that easement. *Foley* v. *Wyeth*, 2 Allen, 135; *Hastings* v. *Livermore,* 7 Gray, 196; *Hamilton* v. *Dennison,* 56 Conn. 368, 1 L.R.A. 287, 15 Atl. 748; *Walker* v. *Clifford*, 128 Ala. 67, 86 Am. St. Rep. 74, 29 So. 588.                              *Motion denied.*