# DISTRICT-REALTY TITLE INSURANCE CORPORATION *v.* JACK SPICER REAL ESTATE, INC.

[No. 18, September Term, 1977.]

*Decided June 7, 1977.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and ORTH, JJ.

*Thomas Penfield Jackson,* with whom were *Arthur C. Elgin, Jr., Alan R. Swendiman* and *Jackson, Campbell & Parkinson* on the brief, for appellant.

*Robert H. Symonds,* with whom was *Lawrence F. Weslock* on the brief, for appellee.

DIGGES, J., delivered the opinion of the Court.

Generally speaking, an insurance policy is a contract. More explicitly, it is an agreement whereby for a stipulated premium one undertakes to indemnify another against loss on a specific subject caused by a specific peril. *See, e.g., Aviation Ins. Co. v. Barclay,* 237 Md. 318, 323, 206 A. 2d 119, 121 (1965); *U.S. Fid. Co. v. Williams,* 148 Md. 289, 302, 129 A. 660, 664-65 (1925); *Bonding & Ins. Co. v. Oliner,* 139 Md. 408, 410, 115 A. 592, 593 (1921). In this non-jury contract action, here pursuant to a writ of certiorari issued to the Court of Special Appeals before it considered the appeal from the Circuit Court for Prince George's County, we are concerned with an insurance contract having as its subject the real estate located at 2262 High Street, S.E., Washington, D.C., and as its peril flaws in the title to that property.[1] Since we disagree with the trial court's conclusion that appellee Jack Spicer Real Estate, Inc. should recover $8,164.71 from appellant District-Realty Title Insurance Corporation for breach of a title insurance agreement, we shall reverse the judgment entered for that amount.

---

1. Appellant District-Realty Title Insurance Corporation contends with considerable persuasion that the second count contained in the declaration of appellee Jack Spicer Real Estate, Inc. (the only count relevant to this appeal) sounds solely in tort, and not exclusively in contract as urged by Spicer. However, we will accept the appellee's construction since the appellant, without demurring, answered with a general issue plea in both contract and tort.

No live testimony was elicited at trial — the only evidence presented consists of two depositions, one affidavit, and a number of documentary exhibits. There is little conflict with respect to the facts, and we relate such of them as are relevant to this appeal. On November 23, 1973, John L. Spicer made a $500 deposit and contracted to purchase 2262 High Street for $8500 from Hartman Realty, Inc., with the $8,000 balance being payable at the time of transfer.[2] The purchaser promptly referred this contract to his attorney, Francis G. Bauer, with the request that he examine the title, prepare the necessary legal transfer documents and conduct the settlement; Spicer then arranged to obtain from Colonial Mortgage Service Company a $14,400 deed of trust loan commitment on his newly acquired real estate. It was from the proceeds of this loan that Spicer expected to pay Hartman Realty the balance due it under the contract as well as costs incident to the transfer, and reserve the remainder to renovate the property.

One of Colonial's conditions for making the loan was that it be assured a first lien on the High Street property. Consequently, through attorney Bauer, also a licensed title insurance broker, Spicer furnished the financial institution with an interim binder issued by appellant District-Realty on December 5, 1973, stating that Colonial would be guaranteed this priority at such time as settlement was conducted in accord with the conditions and stipulations set out in the binder. The record further establishes that shortly after the fifth of December, Spicer, who was in a general way familiar with title insurance for both owners and mortgagees, received a copy of the binder issued to Colonial. It is clear therefore that Mr. Spicer had an opportunity to familiarize himself with the conditions upon which the title company was willing to insure the property. Thereafter, when Bauer mentioned the possibility of Spicer's obtaining a

---

2. The contract of sale was entered into by Mr. Spicer as the purchaser; however, he directed that title be conveyed to a corporation of which he was the president, Jack Spicer Real Estate, Inc. In this opinion we will refer to both Spicer and the corporation interchangeably as Spicer, appellee or purchaser.

combination mortgagee-owner title insurance policy which was available at a substantially reduced rate ($16 to cover the owner, in addition to the charge of $45 to insure the mortgagee alone), the appellee requested that it be included with Colonial in a "combination mortgagee's and owner's" policy. Acting as Spicer's agent, Bauer conducted settlement on February 1, 1974, at his law office in Prince George's County;[3] however, in accord with the common, though undesirable, practice in the Washington metropolitan area, payment to the seller of the purchase price balance was not made at that time. Instead, conforming to that custom, Bauer was to distribute $8,000 of the funds he received from the deed of trust loan to the vendor after recordation of the transfer and lien documents. Unfortunately for Spicer, Hartman Realty never received the balance it was due inasmuch as Bauer fraudulently converted most of this money to his personal use.[4]

With these facts before it, the trial court concluded that the appellee should recover $8,000 plus interest, a total of $8,164.71, from the title company. The judge reasoned that, although the title policy did not cover settlement, Spicer had paid "a premium to get a good title and he didn't in effect, because there was the unpaid amount [on the purchase price which constituted a vendor's lien]." The court continued:

> I feel that there was an implied obligation paid for to give Jack Spicer Real Estate Company a clear title and I'm recognizing this is not on the policy. When I say "clear title," I mean free of any liens, claims or encumbrances, meaning that the person was assuming the responsibility of getting this

3. It is clear from the record that Bauer had neither actual nor apparent authority to conduct real estate settlements on behalf of District-Realty. Moreover, at oral argument before this Court, the appellee's attorney conceded that Bauer was Spicer's agent for the purpose of conducting the settlement.

4. Hartman eventually was paid by Spicer when the appellee resold the real estate at a later date; however, Spicer has been unable to collect from Bauer, who embezzled considerable sums from a number of his clients. For these defalcations, Bauer received a prison sentence and was disbarred from the practice of law. Additionally, we note that the Clients' Security Trust Fund has paid out appreciable sums to former clients of Bauer.

> taken care of, whether it be an unrecorded lien or contract or what have you.

For the reasons now stated, we disagree with the conclusion that District-Realty had an implied obligation to present Spicer with a "clear title."

As a general rule, implied terms of a contract are utilized only in order to supply the place of a missing express term; therefore, where an express term exists, it negatives an implied, inconsistent term relating to the same aspect of the contract. *See West v. Flannagan*, 4 Md. 36, 56 (1853). *See also Sherley v. Sherley*, 118 Md. 1, 28, 84 A. 160, 165 (1912). In the present case, we need not be concerned with a speculative *implied* obligation since it is clear that when Spicer and District-Realty entered into the contract for coverage under a "combination mortgagee's and owner's policy," they intended to be bound by the *express* terms of the interim binder previously issued to Colonial — the appellee agreed to accept the conditions expressed in the agreement, and, even though a policy was never actually issued, District-Realty became obligated to indemnify Spicer pursuant to the terms of the binder. *See Flester v. Ohio Cas. Ins. Co.*, 269 Md. 544, 551, 307 A. 2d 663, 666-67 (1973). This is so because when an owner such as Spicer is added at a greatly reduced premium to an existing agreement with a deed of trust holder, it is clear that, in the absence of evidence to the contrary, the parties intend the second insured to be subject to the same conditions as those imposed on the first insured. Here, there is no evidence in the record which demonstrates that either party intended to modify the terms of the binder for the benefit of Spicer or for the purpose of obligating the title company to give the appellee a "clear title."

Since we have concluded that the interim binder establishes in full the rights of each party with respect to their title insurance contract, we now set out the pertinent portions of that document to determine whether it imposes on the appellant an obligation to indemnify Spicer for the unpaid portion of the contract price:

> *That upon compliance with and/or satisfaction of the requirements set forth under Section 1 of*

*Schedule B of this Binder,* and upon payment of its premium for title insurance, this Company will issue to you, as the insured, its Policy of Title Insurance in the usual form, in the sum of $14,400.00, showing under Schedule B thereof only such exceptions as appear in Section 2 of Schedule B of this Binder, provided no liens, encumbrances or objections intervene between the aforesaid date and the date the instrument creating the estate or interest to be insured is filed of record, or if any liens, encumbrances or objections intervene, provided same are satisfied and/or removed.

This Binder is delivered and accepted upon the understanding that you have no personal knowledge or intimation of any defect, objection, lien or encumbrance affecting said premises other than those shown under Schedule B hereof, and your failure to disclose any such personal information shall render this Binder and any Policy issued based thereon, null and void as to such defect, objection, lien or encumbrance.

\* \* \*

*Schedule B — Section 1: Showing requirements to be complied with; defects and objections to be removed or eliminated; and liens and encumbrances to be satisfied and discharged of record before policy of title insurance will be issued without exception thereto.*

ITEM 1. Instrument creating the estate to be insured, if not recorded at the date hereof, must be duly executed and filed for record, to wit:

   (a) Deed in proper form from present owner(s) vesting title in Jack Spicer Real Estate, Inc.

   (b) Deed of Trust from Jack Spicer Real Estate, Inc. securing the proposed insured in the sum of $14,400.00.

ITEM 2. *Pay the full consideration to, or for the account of, the grantors or mortgagors.*

ITEM 3. Pay all taxes, charges, assessments, levied and assessed against subject premises, which are due and payable.

ITEM 4. Satisfactory evidence should be had that improvements and/or repairs or alterations thereto are completed; that contractor, sub-contractors, labor and materialmen are all paid; and have released of record all liens or notice of intent to perfect a lien for labor or material.

ITEM 5. Satisfaction and release of the following encumbrance(s): (mortgages, trust deeds, judgments or other liens.)

> [Listed here are two specified deeds of trust and a requirement that proof that a former owner died prior to June 7, 1959 be furnished.]

Schedule B — Section 2: Showing defects, objecttions, liens and encumbrances to be shown as exceptions under Schedule B of the Policy.

> 1. Taxes subsequent to the original levy for the year ending 1st 1/2 1974.
>
> 2. Covenants contained in Deed recorded August 25, 1910 in Liber 3357 at folio 5 among the Land Records of the District of Columbia, parties of the second part agree that they will not build nor sell to be built on the premises conveyed, other than a dwelling or dwelling houses of not less than 2 stories high with mansard, half mansard or double pitch roof with gable equal in character and style to dwellings in the immediate vicinity and to be located not nearer than 10 feet in any of its parts to the building line on High Street.
>
> 3. Party Wall Rights [(Emphasis added.)]

Since, as already mentioned, a title insurance policy is a contract, it follows that "in the absence of constitutional or statutory barriers, the parties thereto are at liberty to make their own agreement." *Aviation Ins. Co. v. Barclay, supra,* 237 Md. at 323, 206 A. 2d at 121. Consequently, although a title insurance contract is frequently referred to as a contract of insurance against defects in the title which reasonably affect its marketability, the parties are generally free to define what losses or encumbrances they intend to be covered. *See Lawyers Title Ins. Corp. v. Research Loan & Invest. Corp.,* 361 F. 2d 764, 768 (8th Cir. 1966) (citing cases). And, because title insurance policies are subject to the same rules of construction as are other insurance contracts, such limiting conditions which are expressed in clear and unambiguous words must be given their ordinary meaning since there is no room for construction. *See, e.g., Travelers Ins. Co. v. Benton,* 278 Md. 542, 545, 365 A. 2d 1000, 1003 (1976). Turning to the language of the binder in the present case, it is obvious to us that it plainly imposes no obligation on the insurer to clear the title of existing encumbrances. In fact, Schedule B, Section 1, ITEM 2, unequivocally states that the insured is obligated to pay the full consideration to the seller — in effect, the binder excepts a vendor's lien from the coverage of the policy. Since the judgment awarding damages in favor of the appellee allowed it to recover for a loss expressly excluded by the terms of the agreement, it must be reversed.

> *Judgment of the Circuit Court for Prince George's County reversed and case remanded to that court with the direction that it enter a judgment in favor of District-Realty Title Insurance Corporation against Jack Spicer Real Estate, Inc. for costs.*
>
> *Costs in this Court to be paid by the appellee.*