Michael STONE, et al., Plaintiffs,

v.

**CERTAIN UNDERWRITERS AT LLOYDS, LONDON, et al., Defendants.**

No. CIV.A. 02–1768–A.

United States District Court, E.D. Virginia, Alexandria Division.

April 21, 2003.

Roger W. Heald, Hogan & Heald, Alexandria, VA, for Plaintiffs.

Kevin Timothy Garofoli, Troutman Sanders L.L.P., McLean, VA, Roger W. Heald, Hogan & Heald, Alexandria, VA, for Defendants.

### *MEMORANDUM OPINION*

ELLIS, District Judge.

When plaintiffs' residence was damaged by a fire, they made claims for the loss under their insurance policies with Empire Fire and Marine Insurance Co. ("Empire") and Certain Underwriters at Lloyd's, London ("Lloyd's"). Lloyd's declined coverage on the ground that it believes the fire was intentionally set by plaintiffs. Empire, however, paid plaintiffs a *pro-rata* share of the loss pursuant to an Empire policy provision relating to the existence of other insurance. Plaintiffs claim here is that both insurers are jointly and severally liable for the fire loss, and therefore that Empire is obligated to pay the entire loss. Empire disputes this claim, relying on the Empire policy's "other insurance" provision. This dispute was resolved in Empire's favor on summary judgment, and this Memorandum Opinion records the reasons for this ruling.

**I.[1]**

Plaintiffs, Michael and Patricia Stone, own residential property at 8067 Counselor

---

1. These facts are derived from the parties' stipulated facts.

Road, Manassas, Virginia 20112 ("Property"). Plaintiffs had homeowner's and property insurance for the Property with both Lloyd's and Empire. On May 6, 2002, the Property was severely damaged by fire, causing structural damage to the home and plaintiffs' personal property. On the same day, plaintiffs notified both defendants of their losses resulting from the fire, and requested coverage under the terms of their respective insurance policies.

Lloyd's did not respond to plaintiff's demand and ultimately denied coverage, asserting in its answer to the complaint that plaintiffs intentionally set the fire. Empire, by contrast, responded to plaintiffs' demand by paying plaintiffs $60,428.67, which amount, the parties agree, is Empire's *pro-rata* share of the loss under the terms of Section 9 of the "Conditions" portion of the "Special Provisions" of the Empire policy ("Section 9"). That provision states, as follows:

> Other insurance: If a loss covered by this policy is also covered by other insurance, whether collectible or not, we will pay only the proportion of a loss caused by any peril insured against under this policy that the Amount of Insurance applying under this policy bears to the total amount of insurance covering the property.

The parties further stipulate that Empire may be obligated to disburse future payments to plaintiffs upon completion of the repairs to the Property pursuant to another Empire policy provision.[2]

Plaintiffs filed a motion for judgment alleging a breach of contract claim against both Empire and Lloyd's in the Circuit Court of Prince William County, Virginia on October 22, 2002. On December 3, 2002, Empire removed the case to federal court with Lloyd's consent. Thereafter, Empire initially filed a motion to dismiss, pursuant to Rule 12(b)(6), Fed.R.Civ.P., which was denied on January 10, 2003. *See Stone v. Certain Underwriters at Lloyds, London,* No. 02–1768 (E.D.Va. Jan. 10, 2003) (Order). On January 31, 2003, Empire filed its summary judgment motion, pursuant to Rule 56, Fed.R.Civ.P. In this motion, plaintiffs argued (1) that Empire, pursuant to Section 5 of the "Conditions" portion of the "Special Provisions" of its policy ("Section 5"),[3] was required to pay the full amount of plaintiff's loss in the

---

**2.** *See infra,* note 3 (quoting provisions of the Empire policy stating generally that in some circumstances, Empire may pay more than the actual cash value of the damage once "actual repair or replacement are complete").

**3.** Section 5 states, in the pertinent part, that losses to buildings are settled "at replacement cost...subject to the following [conditions]:"

(1) [Empire] will pay the cost to repair or replace...but not more than the least of the following amounts:
(a) the Amount of Insurance under this policy that applies to the building;
(b) the replacement cost of that part of the building damaged for like construction and use on the same premises; or
(c) the necessary amount actually spent to repair or replace the damaged building.
(2) [Empire] will pay no more than the actual cash value of the damage unless:

(a) actual repair or replacement is complete; or
(b) the cost to repair or replace the damage is both:
(i) less than 5% of the amount of insurance in this policy on the building; and
(ii) less than $2500.
(5) [Claimant] may disregard the replacement cost loss settlement provisions and make an initial claim under this policy for loss or damage to buildings on an actual cash value basis. [Claimant] may then make claim...for the difference between the actual cash value and the full replacement cost of the buildings within six months of the later of:
(a) The last date [the claimant] received a payment for actual cash value; or
(b) The date of entry of a final order of a court of competent jurisdiction declaring [claimant's] right to replacement value.

event that Lloyd's did not pay its share under the Lloyd's policy; and (2) that the Empire policy did not adequately conform to the wording required for all fire insurance policies contained in Va.Code § 38.2–2105A.[4] Empire responds that the clear language of Section 9 of its policy controls this dispute, and compels the conclusion that Empire is only liable to pay its *pro-rata* share of plaintiffs' loss.

## II.

■ It is clear that Virginia's choice of law rules govern this diversity action. *See Klaxon v. Stentor*, 313 U.S. 487, 496–97, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941) (holding that in a diversity case, a federal court must apply the choice of law rules of the forum state). It is equally clear that under Virginia law, the law of the place where an insurance contract is written and delivered controls issues as to coverage. *See Buchanan v. Doe*, 246 Va. 67, 431 S.E.2d 289, 291 (1993). The parties do not dispute that this place is Virginia, and that Virginia law governs the disposition of this insurance dispute.

■ Virginia law is clear and well-settled on the governing standard for interpreting contracts, including insurance policies. Virginia "strictly adheres" to the "plain meaning" rule, meaning that "[w]here an agreement is complete on its face and is plain and ambiguous in its terms, the court is not at liberty to search for its meaning beyond the instrument itself. This is so because the writing is the repository of final agreement of the par-

ties." *See Pacific Insurance Co. v. American National Fire Insurance Co.*, 148 F.3d 396, 405 (4th Cir.1998) (quoting *Lerner v. Gudelsky Co.*, 230 Va. 124, 334 S.E.2d 579 (1985)); *Schneider v. Continental Casualty Co.*, 989 F.2d 728, 731 (4th Cir.1993) (applying *Lerner* and the "plain meaning" rule to the insurance policy context).

■ Thus, the analysis properly begins with the language of the Empire policy, and ends there if, as is the case here, the governing language has a clear and unambiguous plain meaning. Section 9 of the Empire policy clearly and unmistakably provides that Empire is only liable for the proportion of the plaintiffs' loss that the amount of insurance under the Empire policy bears to the total amount of insurance covering the property. Here, the Lloyd's policy constitutes "other insurance" relating to plaintiff's property. Accordingly, Section 9 makes clear that Empire is liable only for its *pro-rata* share of the plaintiffs' loss. And, this is so regardless of Lloyd's refusal to extend coverage, as Section 9 makes clear that its provisions govern whether or not the other insurance is "collectible or not." Nor is it persuasive to argue, as plaintiffs do, that Section 5 and 9 of the Empire policy are in contradiction, thereby creating a policy ambiguity. There is no ambiguity as the provisions are easily harmonized and given full effect together. Section 5 is the general provision dealing with loss settlements for covered property,[5] whereas Section 9, by contrast, is a specific provision that gov-

---

4. Va.Code § 38.2–2105B states that with respect to insurance policies issued in Virginia, no change shall be made in the sequence of the words and paragraphs of the standard provisions, conditions, stipulations, and agreements prescribed by this section, or in the arrangement of the words into lines. Va.Code § 38.2–2105B. The required wording for fire insurance policies states, in the pertinent part:

> This Company shall not be liable for a greater proportion of any loss than the amount hereby insured shall bear to the whole insurance covering the property against the peril involved, whether collectible or not.
>
> Va.Code 38.2–2105A.

5. *See supra,* note 3.

erns only in those circumstances where there is "other insurance" covering the Property. The general provision is not contradicted by the specific provision as it is reasonable to construe them harmoniously.

In sum, therefore, because the Empire policy clearly and unequivocally limits Empire's liability to a *pro-rata* share of the damage where, as here, other insurance exists, and because Empire has already paid $60,428.67, which the parties have stipulated constitutes Empire's *pro-rata* share of the loss to date under the policy, Empire owes plaintiff no further payments.[6]

Plaintiffs' arguments to the contrary do not alter this conclusion. First, the plaintiffs initially argued that the Empire policy did not adequately conform to the wording required by Virginia law for all fire insurance policies.[7] *See* Va.Code § 38.2–2105. Under Va.Code § 38.2–2107, a fire insurance policy's wording may deviate from the required wording if it is "(i) in no respect less favorable to the insured than the standard policy form, and is (ii) approved by the [Insurance] Commission pri-

or to issuance." Va.Code § 38.2–2107. It is clear that both conditions are met here. The language of Empire's "other insurance" provision is no less favorable to the insured than the required language contained in Va.Code § 38.2–2105A.[8] Moreover, the parties stipulated that, pursuant to Va.Code §§ 38.2–2105 and 38.2–207, the State Corporation Commission's Bureau of Insurance approved the language in the Empire policy, on or about September 15, 1997.

Second, plaintiff's contention that they have a right to full recovery under a clause in Section 5 of the "Special Provisions" of Empire's policy, stating that Empire will "pay no more than the actual cash value of the damage . . . ," finds no support in the plain language of Section 5 itself.[9] It is clear that Section 5 generally addresses the manner in which Empire will settle covered property losses. The language in Section 5 plaintiffs rely on specifies circumstances under which Empire may pay *more* than the actual cash value of the damage to the property; it does not govern Empire's liability under the policy where other insurance exists; that is the

---

**6.** Plaintiffs were given an opportunity to amend its complaint in the event that Empire failed to make further payments once repairs to the property were completed. *See Stone v. Certain Underwriters at Lloyds, London,* No. 02–1768–A (E.D.Va. Feb. 28, 2003) (Order). As plaintiffs have failed to file an amended complaint by Wednesday, March 26, 2003, it appears that Empire has fully performed under its obligations to plaintiffs under the policy.

**7.** *See supra,* note 4 (quoting the fire insurance policy wording required by Va.Code § 38.2–2105).

**8.** *See Allstate Insurance Co. v. Charity,* 255 Va. 55, 496 S.E.2d 430 (1998) (holding that an insurance policy stating that a claimant "should" include the actual cash value and amount of loss of the items damaged or destroyed in a sworn proof of loss does not

*require* a claimant to furnish the actual dollar amount of the loss to the insurance company, notwithstanding Va.Code § 38.2–2105's requirement that a fire insurance policy *"shall* contain [a] provision . . . calling for notification to the insurer of the 'amount of loss claimed,' " because Va.Code § 38.2–2107 "provides that a company may use simplified alternative language which is no less favorable to the insured than that contained in § 38.2–2105"). In *Allstate Insurance Co.,* the insurance company's policy language was permitted, even though it did not exactly conform to the requirements of Va.Code § 38.2–2105, because the insurance company's policy language "was not less favorable to the insured."

**9.** *See supra,* note 3.

function and purpose of Section 9, which controls this case.

An appropriate Order will issue.